WILLIAM REED, Appellant, *v.* EMIL G. MELLOR; HUBERT PRIMM, ADMINISTRATOR, Respondent.

April 23, 1878.

1. Where an attorney made a contract to attend to certain definite, specific, and urgent business arising out of criminal charges then pending, or which the prisoner anticipated would be brought against him in the city

where he was confined, and also in another town, and the attorney, as a retainer for his service, took from the prisoner an assignment of certain valuable property of the prisoner, then in the hands of a third person, and there was no evidence of any secret trust, collusion, or knowledge, on the part of the attorney, of any claim against the prisoner or the property, and it did not appear that the property was an unreasonable compensation for the services rendered by the attorney; *held*, that the assignment was good as against a subsequent attaching creditor of the prisoner.

2. An attorney may always demand and receive a reasonable compensation before rendering services; and the payment will be valid, even in the case of an insolvent person contemplating bankruptcy.

APPEAL from St. Louis Circuit Court.

*Affirmed.*

J. D. JOHNSON for appellant: The assignment from Mellor to Primm was a conveyance of goods and chattels, in trust, to the use of Mellor, and was void as to appellant, his creditor. — Wag. Stat. 279, sec. 1. And such trust appearing upon the face of the paper, the court should, as a matter of law, have declared it void. — *Robertson* v. *Robards*, 15 Mo. 459; *Gates* v. *Labeaume*, 19 Mo. 17; *Brooks* v. *Wimer*, 20 Mo. 503; *Walter* v. *Wimer*, 24 Mo. 63; *Stanley* v. *Bunce*, 27 Mo. 269; *Hall* v. *Webb*, 28 Mo. 408; *Johnson* v. *McAllister*, 30 Mo. 327; *Potter* v. *McDowell*, 31 Mo. 62; *The State* v. *Benoist*, 37 Mo. 500; *Bigelow* v. *Stringer*, 40 Mo. 205; *Lodge* v. *Samuels*, 50 Mo. 204. The conveyance by a debtor of all of his attachable property for not more than half of its value is void as to existing creditors, on the ground of inadequacy of consideration. — *Church* v. *Chapin*, 35 Vt. 223; *Morriso* v. *Philliber*, 30 Mo. 148.

C. M. WHITNEY, for respondent.

BAKEWELL, J., delivered the opinion of the court.

This is an interplea in an attachment suit. Reed sued Mellor by attachment to recover $11,274, and summoned McDonough as garnishee, on September 16. On October 11, the garnishee answered the interrogatories filed, admitting that he had in his possession $887 cash, a piece of gold

bullion, a watch and chain, and other trinkets belonging to defendant. He was ordered to turn this property over to the sheriff, and did so, on October 16, and was discharged. On October 19, Wilson Primm, with other counsel, filed an answer for Mellor in the attachment suit; and, on November 3, Primm filed his bill of interpleader in the original attachment, claiming the property which McDonough had turned over to the sheriff, as his own. Issue was joined on this interplea. There was a verdict and judgment for the interpleader; and plaintiff appeals.

On the trial, Primm testified that he was a practising attorney; that Mellor, who was a non-resident, sent for him, on Sept. 10, 1876, to the calaboose where he was confined, and engaged Primm to conduct his defence, both here in St. Louis, and in proceedings said to have been brought against him by the United States government in Detroit. Primm told the prisoner that he wished to have a retainer, either paid or secured. He secured Primm by giving a written assignment of his property in the hands of the officers, which had been taken away from him whilst under arrest. This assignment Primm took to the chief of police and demanded the property; and was put off by excuses from day to day, until, after the lapse of several days, the chief of police informed the witness that he had been summoned as garnishee. The witness said that the assignment was turned over to him by Mellor in payment of his fees for services rendered, and to be rendered. At this point, the interpleader offered in evidence the written assignment, as follows : —

" CITY OF ST. LOUIS, September 11, 1876.

" *To James McDonough, Chief of Metropolitan Police:* —

" SIR, — You will please deliver and pay over to Wilson Primm, Esq., my counsel, the money and effects now in your possession and under your control, belonging to me, the same being assigned and transferred to him by me, in consideration of his legal services rendered, and to be ren-

dered, by him to me; said property consists of nine hundred dollars, more or less, of an ingot of gold, a gold watch and chain, a pistol, and other effects which I cannot now enumerate.

" E. G. Mellor."

This paper was objected to on the ground that it was void on its face, as being a conveyance for the use of the assignor. The objection was overruled. The witness further testified that when he was employed, the prisoner did not know exactly what charge would be brought against him, either here or at Detroit. He anticipated trouble from Detroit; and was illegally held here on the strength of a telegram. There was nothing definite said as to the amount of the fee, except that witness said, when he heard the statement of the prisoner, that he should not charge less than $500 He obtained the release of the prisoner by *habeas corpus*, when the prisoner was at once seized, both by the county authorities and the United States marshal. The United States marshal took the prisoner before the United States commissioner, where Primm obtained his discharge; and he was then taken to Detroit, where Primm accompanied him, according to agreement, and remained there ten days, attending to a charge of smuggling that was preferred against him. Before. leaving for Detroit, Primm received from the prisoner's wife $300 and two diamonds, to pay expenses; out of which he got $110 for his services. The property assigned by the written order was for a retainer for services rendered, and to be rendered, about the trouble in which the prisoner was then involved, including the trouble at Detroit, which he anticipated when he employed the witness, though he could only guess what shape the charge might take.

There was nothing in the evidence tending to show that Primm knew the prisoner was indebted. Nor was the witness asked whether any portion of the property named in the assignment was to be returned by him to the prisoner,

or to be held for his use, or whether there was any other understanding between himself and the prisoner in the matter, than that detailed by him as above.

The evidence for plaintiff tended to show that Mellor was indebted to him in the sum claimed, and that the property claimed by the interpleader was worth $1,332.

At the instance of the interpleader, the court instructed the jury that mere inadequacy of consideration for the alleged assignment would not raise a presumption of fraud; that if they believe from the evidence that Primm was, in good faith, the owner of the property, they should find for him; and that the order read in evidence was sufficient in form to operate as an assignment of the property; and if it was executed and delivered, and served on McDonough before the attachment proceedings were begun, it was a good assignment, unless made and accepted with the intent to hinder, delay, or defraud the creditors of Mellor; and that if Primm was a *bona fide* assignee and purchaser for value of the property in controversy, then the indebtedness of Mellor will not affect the assignment; nor will it be rendered invalid by reason of any disproportion between the value of Primm's services and the value of the property, provided the assignment was made without any intent of delaying creditors.

The court, of its own motion, instructed the jury that if they believed the property was assigned to Primm to hold and apply to the payment of himself for legal services not then determined upon or contracted for between the parties, that is a circumstance to be taken into consideration as tending to prove the assignment void as against plaintiff, even though the consideration for the assignment was in part services previously rendered by Primm. And the court refused to instruct that if the property was assigned for services to be afterwards rendered, and not then determined upon or contracted for between the parties, the assignment is void, even though the consideration was partly services already rendered.

For the plaintiff, the court instructed the jury that entire absence of consideration, or gross inadequacy of price, may be evidence of fraud ; and in determining the question of intent to hinder or defraud creditors, the jury may consider the situation of the parties, their relations to each other, the character and value of the services, and all attending circumstances ; and if the jury find from the evidence that the assignment was made to hinder, delay, or defraud any creditor or creditors of Mellor, the instrument is void, and the verdict must be for plaintiff, even if part of the consideration was for legal services already rendered.

If the testimony of Primm is to be believed, here was an unconditional transfer for a valuable consideration, without collusion, untainted by any secret trust, and there is no evidence whatever tending in the remotest degree to show any knowledge, on the part of the transferee, of any claim of any person whatever, either against the party making the transfer or against the goods transferred, until after he had engaged his services in consideration of this retainer. Primm's testimony must be believed, because it is uncontradicted and unimpeached.    We do not see, therefore, how the jury could have arrived at any other verdict.

An attorney may always demand and receive a reasonable compensation before rendering service, and the payment will be valid, even in the case of one contemplating bankruptcy.    *Lyon* v. *Marshall*, 11 Barb. 241.    The property conveyed to the attorney, in this case, is shown to be worth $1,300.    There is no evidence tending to show that this was an unreasonable fee for the services rendered.    The witness, who was of high standing, and of more than forty years' experience in the profession, was not even asked as to the value of the services rendered.    It is not pretended that the charge was exorbitant ; and it appears that the client was satisfied.

If this had been a contract to attend to any and all professional business for the prisoner for an indefinite period,

or during his life, then there might be some ground for assimilating the contract to agreements for future support of a debtor ; and it might be argued that this was a transfer for the use of the grantor, and an attempt to put his property beyond the reach of his creditors for an inadequate present consideration. But in the case before us the consideration was a present one, and its inadequacy was not called in question by any evidence. The contract was, to attend to some definite, specific, and urgent business arising out of criminal charges then pending, or which the prisoner anticipated would be brought against him in St. Louis or Detroit, or in both places. The prisoner had been arrested here on the strength of a telegram from Detroit, and the attorney employed was to attend to any phases of the case which might present themselves in either of those two towns. It is manifest that this was no general employment for an indefinite period, to attend to any legal business which might at any time concern the prisoner. The employment had reference only to the difficulty of a criminal nature in which he was then involved, the precise nature of which does not fully appear.

We see nothing in the instructions given of which appellant can complain. The instruction refused was properly refused, because there was no evidence that the property assigned was for services to be afterwards rendered, and not then determined or contracted for, in any sense which would go to avoid the contract. If, by the instruction, the counsel asking it meant that the assignment would be void unless it was definitely understood at the time precisely what charges, growing out of the transaction that led to his arrest, the prisoner might have to meet, or where they might be brought, it was bad law.

The judgment of the Circuit Court is affirmed. All the judges concur.