THE GUARANTEE COMPANY OF NORTH AMERICA *v.* THE EAST ROME TOWN COMPANY *et al.*

1. Where stock of an incorporated company is pledged by the owner as collateral security for the payment of a debt, the pledgee is, as a general rule, entitled to collect and receive the dividends thereon, unless this right is reserved by the pledgor at the time the pledge is made.
2. If the company by which the stock was issued, with notice of the fact that the pledge has been made, pays the dividends to the pledgor, it is ordinarily liable to the pledgee for such dividends, although the stock has not been actually transferred on the books of the company.
3. Where the president, secretary and treasurer of an incorporated company actually know that certain shares of stock therein have been transferred by the person in whose name the stock stands on the company's books, to another, such knowledge is notice to the corporation itself.

4. As a general rule, it is the right and duty of a pledgee to whom stock has been pledged as collateral security, to collect and receive, for the use of the pledgor, dividends accruing upon the stock pending the bailment, although the debt secured by the pledge may, after such accrual, have been fully paid off by an actual sale of the stock; and in an action by the pledgee against the company for such dividends so accruing, the company will be liable, unless it shows that it has in fact paid the dividends to the pledgor. The above general rule may, for equitable reasons, be subject to exceptions in particular cases.

5. The verdict was not supported by the evidence.

August 5, 1895.

Complaint. Before Judge HENRY. Floyd superior court. September term, 1894.

REECE & DENNY and T. W. ALEXANDER, for plaintiff. FOUCHÉ & FOUCHÉ, for defendants.

SIMMONS, Chief Justice.

It appears from the record, that Cothran & Co., a firm composed of Charles H. and James E. Cothran, became the agents of Armour & Co., and gave them a bond, with the Guarantee Company of North America as surety, for the payment of all amounts belonging to Armour & Co. that came into their (Cothran & Co.'s) hands as such agents. They subsequently became indebted to Armour & Co. a large amount which they were unable to pay, and the Guarantee Company having paid it in their behalf, they gave their promissory notes to the Guarantee Company for the amount thus paid, and as security therefor deposited with that company certain collateral, consisting in part of seventy-seven shares of the stock of the East Rome Town Company, sixty-two of which belonged to H. D. Cothran, the father of Charles H. and James E. Cothran, and were indorsed by him in blank. The notes not being paid at maturity, the collateral was sold and the pledgee itself became the purchaser. This sale was admitted to be regular and legal in every respect. While the stock was held as collat-

eral, certain dividends were declared upon it, but it seems that the pledgee had no notice of this. Upon learning that the dividends had been declared, it made a demand therefor upon the East Rome Town Company, which was refused; whereupon it brought this action to recover the same. There was a verdict in favor of the defendant, and the plaintiff made a motion for a new trial, which was overruled, and it excepted.

1. The law seems to be well settled, that where stock of an incorporated company is pledged by the owner as collateral security for a debt, the pledgee has a right, and is in duty bound, to collect the dividends on the stock, and apply them to the debt for which the stock is pledged, or to hold them as trustee for the pledgor. The dividends follow the stock into the hands of the person who is the legal holder of the stock. While the general property in the stock remains in the pledgor (Code, §2142), the pledgee has such a title therein as would authorize and require him to collect the dividends. Colebrook on Collateral Securities, §§100, 270; Jones, Pledges, §398; 18 Am. & Eng. Enc. of Law, p. 703. Of course where by a special contract the pledgor reserves the right to collect the dividends himself, this rule does not apply.

2, 3. If, in the absence of an agreement reserving to the pledgor the right to collect the dividends, the corporation, with notice of the fact that the pledge has been made, pays the dividends to the pledgor, it is liable to the pledgee for such dividends; and this is so although the transfer of the stock has not been entered on the books of the corporation. (2 Thomp. Corporations, §§2180, 2621; Gemmell v. Davis, 75 Md. 546, s. c. 32 Am. St. Rep. 412.) The main reason for entering such transfers on the books is to afford notice as to the ownership of the stock; and where the proper officers of the corporation have notice independently of the

v 96·33

books, their knowledge is notice to the corporation. In this case, although there was no transfer on the books of the corporation, it appears that when the pledge was made and when the dividends were declared, the president and treasurer and the secretary of the corporation knew the stock had been pledged. The knowledge of these officers was notice to the corporation, and the corporation is bound thereby. (Mechem on Agency, §729; 2 Cook on Stock and Stockholders, §727; Wade on Notice, §683b.)

4. The court instructed the jury, in substance, that upon the satisfaction of the debt by the sale of the stock, the interest of the pledgee in the dividends ceased, and it could not recover for dividends that accrued before that time. We think, if the company had not already paid the dividends, the pledgee would still have the right to recover them notwithstanding the debt had been satisfied. As to these dividends the pledgee, as we have shown, was the trustee of the pledgor; it was its right and duty to collect them, and if they were not paid to the pledgor he would have a right to demand of the pledgee an accounting for them. Unless, therefore, the corporation had paid the dividends, the pledgee still had such an interest therein as would entitle it to sue for them. If the corporation, in addition to showing that the debt had been satisfied, could show also that it had paid the dividends to the pledgor, this, of course, would be a good defense to the action.

5. The evidence fails to show that the dividends were paid to the pledgor, or to anybody else. It follows, from what we have said, that the verdict was not supported by the evidence, and a new trial should be granted.

*Judgment reversed*