FARMERS' & MERCHANTS' NATIONAL BANK OF GALVA, ILL-
INOIS, APPELLANT, V. CHARLES W. MOSHER ET AL.,
APPELLEES, IMPLEADED WITH DIXON NATIONAL BANK,
OF DIXON, ILLINOIS, ET AL., APPELLANTS.*

FILED DECEMBER 4, 1901.   No. 9,891.

Commissioner's opinion, Department No. 1.

1. Right of Insolvent to Dispose of His Property. In the absence of
   a mutual fraudulent intent the law does not interfere with the
   right of a person, be he solvent or insolvent, to make such dis-
   position of his property, based upon a valid consideration, as his
   judgment dictates.

2. Right of Insolvent to Employ Attorneys. An insolvent debtor has
   the right to employ attorneys to defend his estate and himself,
   and to transfer his property in payment of such contemplated
   services, provided it is done in good faith and the property
   transferred does not exceed a reasonable fee for the service
   which might be reasonably anticipated.

3. Verdict: DIVIDENDS. The vendee or pledgee of shares of stock in
   a corporation is entitled to all dividends which are declared on
   the stock after the sale or pledge, regardless whether the trans-
   fer has been made upon the books of the corporation.

4. Corporation as Garnishee. Under our statute, prior to the adoption
   of section 485a of the Code of Civil Procedure, a corporation may
   properly be made a garnishee, where the only property sought
   to be attached is the capital stock of the corporation owned by
   the defendant.

5. Stockholder: REAL AND APPARENT INTEREST. The real and not the
   apparent interest of a stockholder in the property of the cor-
   poration represented by shares of stock registered in his name,
   may be reached by garnishee process served on the corporation.

6. Actual Rights of Stockholder. The real actual rights and interests
   of a stockholder, will be reached by the garnishment upon the
   corporation without regard to the apparent interest of the
   owner.

7. Evidence. Evidence examined, and held to sustain the finding and
   decree.

8. Motion for New Trial. Where no motion for a new trial has been
   filed in the lower court, and it is sought to review the judg-

*Rehearing allowed.

ment on error proceedings, this court will look into the record
to ascertain if the pleadings state a cause of action or defense
and support the judgment or decree rendered, but this court
will not go back of the verdict rendered by the jury or the
findings of fact made by the trial court to review anything done
or proceedings had.

APPEAL from the district court for Lancaster county.
Heard below before HOLMES, J.  *Affirmed.*

*A. C. Ricketts, Henry H. Wilson, Lionel C. Burr, S. B. Pound, Roscoe Pound, Cobb & Harvey, John H. Ames, E. F. Pettis* and *Nathan S. Harwood,* for appellants.

*Charles O. Whedon, Charles E. Magoon* and *Lambertson & Hall, contra.*

DAY, C.

This suit is a creditors' bill brought by the Farmers' &
Merchants' National Bank of Galva, Illinois, in the district
court of Lancaster county, against Charles W. Mosher and
Richard C. Outcalt and some twenty-nine other defend-
ants, referred to hereinafter by name as occasion requires.
Its object is to set aside certain conveyances of real and
personal property claimed to have been made by Mosher
and Outcalt in fraud of their creditors, and also to
subject certain stocks alleged to be owned by them,
in various corporations, to the payment of plaintiff's
judgment.  A number of the defendants named in the
bill filed answers and cross-petitions, setting up their
respective claims to priority upon the property sought
to be reached, and praying for general equitable
relief.  From a finding and judgment adverse to the claims
of plaintiff, and also to defendants the Dixon National
Bank, the People's National Bank and the La Salle Na-
tional Bank, the plaintiff and the defendants above named
have brought the case to this court by appeal, and the de-
fendant, Kent K. Hayden, receiver, has brought the case
to this court on error.  The facts which form the basis of

the claims of the respective parties will sufficiently appear in the further consideration of the case. On January 26, 1893, the plaintiff herein commenced an action in the district court of Lancaster county against the defendants Mosher and Outcalt, and procured the issuance of an attachment, which on January 27 was levied upon certain lands, hereinafter referred to, and also on said day plaintiff caused notices in garnishment to be served upon the Farmers' & Merchants' Insurance Company, the Western Manufacturing Company, the Lincoln Gas Company, and others not necessary to be mentioned. On June 25, 1894, the plaintiff recovered a judgment in said attachment suit against Mosher and Outcalt for the sum of $5,430.50, upon which execution was issued, and returned wholly unsatisfied. On January 26, 1893, the defendants the Dixon National Bank and the People's National Bank each brought an action in the district court of Lancaster county against Charles W. Mosher, and procured attachments to be issued and notices in garnishment served on said day upon the Lincoln Gas Company, the Farmers' & Merchants' Insurance Company, the Western Manufacturing Company and others. On June 14, 1894, the Dixon National Bank and the People's National Bank recovered judgments in their respective actions against said Mosher, the former for the sum of $10,805, and the latter for $10,818.60. On January 28, 1893, the La Salle National Bank brought an action in the district court of Lancaster county, and on the same day caused attachment and garnishment to be issued and served upon the Western Manufacturing Company, the Lincoln Gas & Electric Light Company, the Farmers' & Merchants' Insurance Company, and others. On June 15, 1894, the La Salle National Bank recovered a judgment in said attachment suit against Mosher for $5,479.16.

It is conceded that the attachment and garnishment levied by the Dixon National Bank and the People's National Bank is prior to the attachment and garnishment of the plaintiff, and that the attachment and garnishment of the plaintiff is prior to that of the La Salle National Bank.

It appeared from the answers of the several garnishees in each of the foregoing suits that the books of the several corporations disclosed that Mosher was at the time of the serving of the notice of garnishment the owner of 500 shares of stock in the Western Manufacturing Company, 250 shares of stock in the Farmers' & Merchants' Insurance Company and 2,580 shares of stock in the Lincoln Gas Company. The attachments in each of the foregoing suits were confirmed and an order of sale issued of the attached property. Pursuant to this order the sheriff offered for sale 500 shares of Western Manufacturing Company stock, 250 shares of the Farmers' & Merchants' Insurance Company and all profits and dividends thereon, 2,580 shares of the Lincoln Gas Company known as "new issue," and 250 shares of the Lincoln Gas Company known as "old issue." At this sale, held August 1, 1894, the stock in the Lincoln Gas Company was sold to W. Q. Bell for $2,000. The 500 shares of stock in the Western Manufacturing Company were sold to the Dixon National Bank and the People's National Bank for $100, and 250 shares of stock in the Farmers' & Merchants' Insurance Company were sold to the Dixon National Bank for $100.

The Farmers' & Merchants' National Bank insists there are three funds out of which it is entitled to be paid the amount of its judgment. These will be considered in the order of their presentation in the briefs:

First, it is contended that 350 shares of stock of the Lincoln Gas Company transferred by Mosher on January 22, 1893, to C. O. Whedon and C. E. Magoon should be applied in payment of its judgment. The gist of this contention is that the consideration for the transfer, being largely for services to be performed in the future, is void as to existing creditors. The facts out of which the controversy between the plaintiff and Whedon and Magoon arises are as follows: On the day prior to the suspension of the Capital National Bank of Lincoln, on January 23, 1893, C. W. Mosher, who was president of said bank, employed Whedon and Magoon as attorneys to defend him

and his interests in all matters wherein the services of attorneys were required, and also that they should act as attorneys for Louise P. Mosher, the wife of said C. W. Mosher, in such litigation as she should be, or become, involved in. At the time of said employment, as payment in full for services theretofore rendered, and for services to be performed in the future under the employment then entered upon, Mosher sold, transferred and delivered to Whedon 200 shares of the capital stock of the Lincoln Gas Company, and to Magoon 150 shares. At the time of the delivery of these shares of stock they stood in the name of Mosher upon the books of the company. The defendants, Whedon and Magoon, pursuant to said employment, rendered services as attorneys to said Mosher, during all the time which has elapsed since the employment, appeared for him in at least 120 civil cases in the state and federal courts, and also defended him in a number of criminal actions. The proof is clear that the services performed under the employment were fairly and reasonably worth the amount paid by Mosher. The plaintiff practically concedes that fraudulent intent did not exist in this transaction, as a matter of fact, but contends that this transfer is one which the law makes fraudulent. A very able and exhaustive brief has been filed by plaintiff in support of this contention, but viewed in the light of our statutory enactments and the decisions of our own court, we think the position untenable. Section 20 of chapter 32 of the Compiled Statutes of 1899 provides as follows: "The question of fraudulent intent in all cases arising under the provisions of this chapter shall be deemed a question of fact, and not of law, and no conveyance or charge shall be adjudged fraudulent, as against creditors or purchasers, solely on the ground that it was not founded on a valuable consideration." In *Heidiman-Benoist Saddlery Co. v. Schott*, 59 Nebr., 20, it is said: "The validity of the mortgage depended upon the intention of the parties, and that, according to the provisions of our statute, was not a question of law for the court." In *Lepin v. Coon*, 54 Nebr.,

664, it is said: "The intent with which the sale of the stock was authorized or permitted was the vital question to be decided. It was a question of fact and not of law." It has been held that the inferences to be deduced from the proofs are inferences of fact and not of law. It may be the inference is unavoidable,—none the less it is an inference of fact. *Shaw v. Robinson,* 50 Nebr., 403, 419. The essential thought running through all our cases bearing on this question is that to make a conveyance a fraudulent transfer, a fraudulent intent participated in by both parties to the transfer must exist. In the absence of a mutual fraudulent intent, the law does not interfere with the right of a person, be he solvent or insolvent, to make such disposition of his property, based upon a valid consideration, as his judgment dictates. But it is insisted that by the terms of the employment Mosher was to receive future benefits, and for that reason the law will hold the transfer fraudulent. We think this contention not well founded. An insolvent debtor may secure to himself the future benefits of a transaction, if the parties to it have entered into it in good faith, and the transaction be not merely a device to defraud creditors. Indeed, the transactions are rare in the affairs of mankind where future benefits do not arise. Suppose an insolvent debtor were to purchase a suit of clothes, or food, would the fact that he would receive some future benefit from his purchase, render the transaction fraudulent and void, and subject the merchant who sold the goods or provisions liable to the creditors of the insolvent for the purchase price? We think not. It is only when the transaction is of such a magnitude and extent, and the future benefits so great, as to convince the court of its fraudulent character, that it will be adjudged reprehensible. In our view, an insolvent debtor has the undoubted right to employ attorneys to defend his estate and himself, and the transfer of his property in payment of such contemplated services, where it is reasonable and done in good faith, is not a fraud upon other creditors. That the services of counsel were necessary in this case is

amply sustained by the proofs and there is no contention that the amount paid was unreasonable. The case of *Morrell v. Miller*, 43 Pac. Rep. [Ore.], 490, is in point. The facts sufficiently appear in the following extract from the opinion: "The 'attendant circumstances' in the case at bar, others than those related, may be briefly stated: Miller was under arrest for a grave offense, then thought to be more serious than it afterwards proved to be, he being apprehensive that Morrell would die of the wound received at his hands. He had incurred a civil liability to Morrell because of the assault made upon him, and had previously transferred all of his property, of the aggregate value of $5,585.60, to Lord, for the purpose of securing his fees for services as an attorney, with a declaration of trust that the balance should be disposed of as he and Lord should agree. * * * There are some attendant indicia of fraud, such as the transfer of all of Miller's property of such considerable value to Lord, the declaration of a secret trust in connection therewith, and the inadequacy of consideration for the second deed. But, upon the other hand, Miller was deeply interested. He was in the toils of the law, charged with a grave offense, and his object was to extricate himself therefrom. The purpose of making such use of his property as to secure able counsel to conduct his defense, and to attend to other apprehended litigation, was perfectly legitimate. His right to be heard by counsel is a constitutional right, and he should be permitted, unless hindered by legal process, the free and untrammeled use of his property to obtain legal assistance; otherwise, constitutional privileges would be invaded. * * * There being no evidence that these fees were purposely fixed at the amounts specified for the purpose of covering up Miller's property to render it inaccessible to his creditors, we can not say that, because of the largeness thereof, the contract supporting them is void, and ought to be disregarded." In *In re Luce*, 83 Cal., 303, it is said: "The payment by an insolvent debtor and the acceptance by his attorneys of their fee in advance, out of the goods of the

insolvent, if the salable value of the goods does not exceed a reasonable fee for the service which might be reasonably anticipated, and the goods are not to be returned, does not render the parties liable to the charge of a fraudulent conspiracy." *Reed v. Mellor,* 5 Mo. App., 567; *Lyon v. Marshall,* 11 Barb. [N. Y.], 241. The trial court found that Mosher had transferred, assigned and delivered to the defendants Magoon and Whedon 350 shares of the capital stock of the Lincoln Gas Company in payment for attorney's fees for services rendered and to be rendered in the future; that the stock was not transferred for the purpose of hindering, delaying or defrauding creditors; that the transfer was based on a valid consideration; that they were the lawful owners and holders thereof and were entitled to have said stock transferred on the books of the company, and were entitled to the earnings and profits accruing thereon. We think the evidence amply sustains the finding of the court with respect to these shares of stock and that the judgment with respect to them is right.

The second fund out of which plaintiff asserts its judgment should be paid is certain dividends accruing to Mosher and Outcalt, and placed to their credit on the books of the gas company upon capital stock standing in their names upon the books of said company. It appeared that the capital stock of the gas company had been largely increased since its organization, and in order to distribute pro rata among its stockholders this increase of capital stock, the old shares were called in by the company for cancelation, and in lieu thereof new shares in the increased amount were issued to the holder. To illustrate: a stockholder having $25,000 of old issue was entitled, on surrendering his shares, to receive $45,000 of new issue. Upon the basis of new issue, Mosher was entitled to receive 2,580 shares and Outcalt 970 shares. At the time of the garnishment Mosher had received all of the shares to which he was entitled, as shown by the books, except 464 shares, and these were withheld, pending the surrender of the old shares. Of these shares claimants have appeared for all

except 100. Of the 970 shares which Outcalt was entitled
to receive there had been delivered to him all but 131, and
claimants had appeared for all of these. It is a settled rule
of law that as between the vendor and vendee of shares of
stock, that the vendee is entitled to all the dividends on
the stock which are declared after the sale of the stock
regardless whether the transfer has been made upon the
books of the corporation. *Gemmell v. Davis,* 75 Md., 546;
*Black v. Homersham,* 4 L. R. Ex. Div. [Eng.], 24; 2 Cook,
Corporations [4th ed.], sec. 539. And a pledgee is likewise
entitled to dividends on the stock held in pledge, but must,
of course, account to his pledgor when the pledge is re-
deemed. Cook, Stockholders, 468; *Central City Nat. Bank
v. Wilder,* 32 Nebr., 454. These general rules are, of
course, subject to such exceptions as would arise by con-
tract between vendor and vendee and also such as would
arise by payment of dividends by the corporation to the
holder of stock certificates, as shown by the books, without
notice of a transfer. The exceptions, however, need not be
considered, for the facts of this case present only the gen-
eral rule. The testimony shows that the dividends were
declared on the stock standing in the name of Mosher on
the books of the corporation and the amount of the divi-
dends was credited to him. This transaction, however,
did not make it Mosher's money. The record shows that
all of the shares were transferred before any dividends
were declared, except the 464 shares, and if these did not
pass to the several persons now claiming to be owners, they
passed by the sale from the sheriff to Bell, and in either
event could not be applied in discharge of plaintiff's judg-
ment. The fact that the corporations may have wrong-
fully paid to Mosher, or his assigns, dividends which
should have been paid to the vendees or pledgees of the
stock affords to plaintiff no cause of complaint—that is a
matter to be settled between the company and such trans-
ferees or pledgees. Let us now revert for a moment to the
sale of the stock under the order of sale issued in the at-
tachment suits at the instance of the People's National

Bank and the Dixon National Bank, in which it will be remembered the Mosher stock in the gas company was bought by Bell for $2,000. It is contended by a number of transferees and pledgees of the stock that Mosher and Outcalt had no attachable interest in the stock and also that prior to the enactment of section 485a of the Code of Civil Procedure stock in a corporation could not be attached by the service of notice in garnishment on the corporation. In our view, under the express and sweeping provisions of sections 201, 207, 208, 212 and 221 of the Code, stock of the attachment defendant in a domestic corporation may be reached by garnishment. It would unduly prolong this opinion to quote at length the several statutory provisions above cited. Suffice it to say that section 201 provides that the order of attachment shall be directed to the sheriff and requires him to attach "stocks, or interests in stocks." Sections 207 and 208 provide that corporations may be garnished, and the manner of service of the process. Section 212 provides that the garnishee shall stand liable to the attaching creditor for all property in his hands from the time that he is served with notice. Section 221 provides for the appearance of the garnishee to make disclosure, "and in case of a corporation, any stock therein held by or for the benefit of the defendant, at or after the service of the notice." Our Code of Civil Procedure upon this subject was evidently adopted from Ohio. Sections 194, 200 and 214 of the Ohio Code are identical with sections 201, 207 and 221 of our Code. The interpretation placed upon like sections by the supreme court of Ohio meets our approval. In *National Bank of New London v. Lake Shore & M. S. R. Co.*, 21 Ohio St., 221, the court says: "Under our statute, a corporation may properly be made a garnishee in a case where the only property sought to be attached is capital stock of the company, owned by the defendant or held for his benefit. And such garnishee from the time of the service of notice upon it, becomes liable to account to the attaching creditor for such stock and its proceeds if he

finally succeed in the action." In *Norton v. Norton,* 43 Ohio St., 509, it is said: "The interest of a stockholder in the property of a private corporation, represented by certificates of shares registered in his name, may be reached by garnishee process served upon the corporation." From the foregoing provisions of the statute, and upon the authority of the decisions cited, we are clearly of the opinion that the stock of a debtor may be reached by notice of garnishment duly served upon the corporation and that the equitable interest of the debtor may be seized by such notice and applied in payment of the debt. Such garnishment would not hold any stock which had been previously transferred in good faith, to a purchaser or pledgee, although a formal transfer thereof may not have been made upon the books of the corporation. The real, actual rights and interests of a stockholder will be reached by the garnishment, without regard to the apparent interest of the owner. If this position is correct, it follows that such interest as Mosher may have had in the stock was held by the notice of garnishment issued at the instance of the People's Bank and the Dixon National Bank and that his interest in the stock, whatever it might be, was sold under the order of sale to Bell.

The third fund out of which plaintiff contends it should be paid is certain real and personal property which it is alleged was fraudulently transferred to D. E. Thompson. As affecting this branch of the case, the record discloses that on November 14, 1891, Thompson sold to Mosher and Outcalt 180 shares of stock in the Capital National Bank for $22,500 and in payment thereof took the note of Mosher and Outcalt for said amount payable five years after date. To secure the payment of this note 200 shares of stock of the Lincoln Gas Company were assigned to Thompson as collateral security. This stock was held by him until December, 1892, when, by agreement between Mosher and Thompson, the gas stock was surrendered and in lieu thereof certain lands in York and Lancaster counties were deeded to Thompson. These lands were given as security

for the indebtedness. It was also shown that Thompson had sold the lands in York county prior to the commencement of the present suit, and that the lien created by plaintiff's attachment upon the lands in York county had been released by the attorneys for the plaintiff, and that the lands had brought at sale all they were reasonably worth, and that the amount of the sale had been credited upon the note, and that there was still a balance due thereon of about $15,000. The lands in Lancaster county Thompson still held, and upon these the plaintiff was given a second lien. The court found upon the pleading and the evidence that the note for $22,500 was given for a valuable consideration, and that to secure the same Mosher and Outcalt conveyed by warranty deed the lands alleged to have been so conveyed and fully described in the petition; that said conveyances were intended as security for payment of the note and were not given by Mosher and Outcalt or accepted by Thompson for the purpose of hindering, delaying or defrauding creditors, but for a lawful purpose. This finding of the trial court upon this branch of the case is sustained by the evidence. There was some claim made that the Capital National Bank was insolvent at the time Thompson sold his stock; that the stock was worthless at the time, and, therefore, there was no consideration to support the note. There was not, however, sufficient evidence to establish that the transfer was a device to defraud creditors, and we think the transfer of the stock was a sufficient consideration. As before stated, the Dixon National Bank and the People's National Bank purchased at the sheriff's sale the 250 shares of stock in the Farmers' & Merchants' Insurance Company standing in the name of Mosher on the books of the company; the company, however, refused to transfer these shares to the purchasers because the stock was claimed by Henry Mansfield. In its cross-petition the Mansfield estate claimed a first lien upon said shares of stock and prayed a foreclosure of its lien. The court found generally in favor of the Mansfield estate, that, prior to the commence-

ment of the proceedings at law by the plaintiff and the cross-petitioners, the executors of the estate of Henry Mansfield, deceased, held 250 shares of the stock of the Farmers' & Merchants' Insurance Company which had been duly assigned to Henry Mansfield as collateral security for the indebtedness of $22,500 described in the cross-petition, and that the estate of Henry Mansfield was entitled to a first lien upon the certificates of stock for the sum of $34,392.36 with interest from date of decree. It was ordered that the stock be sold as upon execution and the proceeds applied first to the payment of said lien and any remaining to be paid into court to be distributed upon the further order of the court. No useful purpose can be subserved by a review of the transactions between Mosher and Henry Mansfield. We have gone over the record, and the findings and judgment of the trial court meet our approval.

Kent K. Hayden, receiver, seeks to review the judgment of the trial court by proceeding in error, but the record discloses that he filed no motion for a new trial. The rule is well established in this state that to obtain a review of a case on error in this court a motion for a new trial must have been filed and the errors relied on specifically pointed out to the district court. *Harrington v. Latta,* 23 Nebr., 84; *Cruts v. Wray,* 19 Nebr., 581; *Hansen v. Kinney,* 46 Nebr., 207.

There are a number of other questions argued in the voluminous and numerous briefs of counsel representing the different interests in this case, but in our view the foregoing opinion sufficiently reviews the important questions presented. We have carefully examined the record and in our opinion it sustains the finding and judgment of the lower court.

We therefore recommend that the judgment be affirmed.

HASTINGS and KIRKPATRICK, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is

AFFIRMED.