John O. Yeiser, appellant, v. Frank A. Broadwell et
al., appellees.

Filed January 23, 1909. No. 15,739.

1. **Attachment: Priorities.** A written assignment of a sum of money
in the custody of an agent, intended to convey the title thereof
to the assignee, and made in definite terms, without the reserva-
tion of control in the assignor, is sufficient to give the assignee
priority over a creditor attaching such funds in the hands of the
agent subsequent to the date of the assignment.

2. **Fraudulent Conveyances: Presumptions.** Fraud is not presumed
from the mere fact that an insolvent debtor assigns property or
pays money to his attorney for services rendered or to be ren-
dered in the future.

Appeal from the district court for Douglas county:
Alexander C. Troup, Judge. *Reversed.*

*John O. Yeiser, pro se.*

*Byron G. Burbank* and *Lysle I. Abbott, contra.*

Epperson, C.

Upon a former appeal to this court the plaintiff ob-
tained the reversal of an adverse judgment because he
had been refused a jury trial. The cause was remanded
to the lower court, whereupon he waived a jury and again
suffered defeat. One of the appellees intervened in the
court below, and prayed that he might be permitted to
go hence without day. Other than the above there is
nothing in this case characterizing it as a comedy. It
has not even the rhythm of melodrama. The subject mat-
ter is apparently the last crumb of the Nebraska estate of
Adolphus Frederick and Phoebe Rebecca Elizabeth El-
wina Linton, which has been consumed by their creditors.

Prior to December, 1902, W. K. Potter, receiver of the
Omaha Loan & Trust Company, had collected $1,830 of
rent money belonging to the Lintons. In December the
appellee Cathers garnisheed this fund in the hands of the

receiver, thereby attempting to apply it to the payment of a judgment against the Lintons. Potter then brought the money into court and deposited the same with the clerk, Broadwell, one of the parties hereto, who has since had the actual custody thereof. Subsequently, however, it was determined that the judgment upon which the proceeding was founded had been paid. *Linton v. Cathers,* 4 Neb. (Unof.) 641. Cathers then by motion sought to subject the fund to the payment of another judgment which he obtained against the Lintons January 17, 1903. Yeiser intervened. These proceedings were dismissed February 23, 1905; it being held that the funds were not *in custodia legis.* Immediately Cathers garnisheed both Potter and Broadwell. A few days later this action was instituted; plaintiff claiming the fund in controversy by assignment from the Lintons. By agreement the garnisheed defendants were discharged as such, and were permitted to answer the plaintiff's petition in this action wherein Cathers and another claiming under him had intervened. In May, 1902, the Lintons employed the plaintiff herein, an attorney at law, to take charge of all litigation in which they were involved. There was an understanding between them, but not reduced to writing, in which it was agreed that the plaintiff should receive the rents from all the property in Nebraska belonging to the Lintons. On May 20, 1902, at the request of plaintiff, the Lintons sent to Potter a telegram as follows: "Pay to John O. Yeiser any money in your hands due the undersigned." By errors in transmission it was addressed to "W. K. Ralter" instead of "W. K. Potter," and signed "A. S. Linton" and "P. R. E. E. Linton" instead of "A. F. Linton" and "P. R. E. E. Linton," notwithstanding which it reached Mr. Potter. On April 20, 1903, the Lintons directed Broadwell, the clerk of the court, by writing to pay the plaintiff Yeiser "any funds in your hands up to date which may be or has been found by the court to be due either severally or jointly to the undersigned." In January, 1904, the Lintons executed an instrument, as-

signing the rent due or to become due upon any real estate in Nebraska owned by them to the plaintiff, but said assignment was made subject to revocation at any time without notice. On August 29, 1904, the Lintons executed an assignment, the body of which is as follows: "For value received we assign all money due to us for rents from the Linton estate, Omaha, Nebraska, up to date, to John O. Yeiser."

The sufficiency of these assignments to convey title is the real question for determination. It is argued by the interveners that plaintiff's contract with the Lintons for the rents and profits of their estate is within the statute of frauds; the same not being in writing. Although the original contract, being for any and all rents which might accrue in the future, may have been within the statute of frauds, yet the plaintiff's right to the funds in controversy would not thereby be defeated if he subsequently procured a sufficient assignment thereof. When Potter collected the funds in controversy, they belonged to the Lintons and were wholly subject to their control. Potter, although receiver of the Omaha Loan & Trust Company, in his relations with the Lintons was but a collection agent, or, at most, the custodian of their funds. By the direct request of the plaintiff herein, the Lintons sent to Potter a telegram directing him to pay the money in his hands to Yeiser. This was a sufficient assignment, and was binding upon the Lintons. Had Potter complied with its terms and paid the amount then in his hands to Yeiser, the Lintons would have been irrevocably bound thereby. It is true that, on account of the errors in transmission Potter was justified in withholding the fund until the telegram could be authenticated. But, as the telegram was genuine, it was sufficient to vest title to the moneys then in Potter's hands in the plaintiff. In a former case between some of the parties hereto the telegram was not proved, and the plaintiff herein was not permitted to recover. *Yeiser v. Cathers,* 5 Neb. (Unof.) 204. But that case is not *res adjudicata,* as appellees contend.

The judgment there was that the garnishee should pay the fund into court to abide its future orders. Nothing further was determined, except that the evidence there did not establish the authenticity of the telegram. Be that as it may, subsequently executed written assignments were sufficient to cure any defects therein. The assignment of January, 1904, was without vigor, and we do not consider that the plaintiff obtained any rights thereunder. But all the other assignments were made in writing, and at times prior to the legal impounding of the fund by the intervener Cathers. With the exception of the one assignment of January, 1904, the assignments made by the Lintons of the funds in controversy were definite and without reservation. In form they were similar to instruments usually made for the purpose of assigning funds. They were intended to pass title from the assignor to the assignee. They are, for these reasons, distinguishable from the attempted assignments construed in the cases cited by the appellees (*Nebraska Moline Plow Co. v. Fuehring,* 60 Neb. 316; *Phillips v. Hogue,* 63 Neb. 192), and cases in other states construing assignments in which the power to control was reserved in the assignor. For more than two years the fund was improperly impounded, during all of which time it has or should have been subject to the control and disposition of the Lintons or of their assignee, the plaintiff herein. At the time the garnishee summons upon which Cathers relies was served, the title to the fund had vested in plaintiff under his assignments, and his right thereto is superior to that of the interveners, unless, as contended by the latter, the assignments were made in fraud of the Lintons' creditors.

The Lintons were insolvent in May, 1902, and have continued so until the present time. It seems that they had no property except the rents and profits derived annually from certain real estate. These rents they attempted to assign to the plaintiff Yeiser, some of which,

23

including the fund here in controversy, had been collected at the time of the assignments. Faithful to his employment, the plaintiff took charge of their litigation and in a great measure was successful. There is no contention that his charges were exorbitant. The unpaid balance thereof exceeded the amount here in controversy. There is no evidence of actual fraud on the part of either the Lintons or the plaintiff herein. Fraud is not presumed from the mere fact that an insolvent debtor assigns property or pays money to his attorney for services rendered or to be rendered in the future. To hold that such is the case would be to say that an insolvent has no legal right to compensate an attorney to assist him in litigation. It appears that the Lintons had need of the professional services of an attorney at law. They were assailed by creditors, one of whom, at least, was attempting to collect the same debt twice, others were asserting demands subsequently defeated. We know of no law which will bar even an insolvent litigant from contesting unjust suits brought against him. It is true that transfers of property to an attorney by an insolvent client are scrutinized very closely by the court, and if the alleged consideration is disproportionate to the services rendered or if the attorney's charges are exorbitant, such transfers will be set aside. But where the transfer is made for services rendered or to be rendered in litigation, conducted in good faith by the attorney and the client, and where the charges made by the attorney are fair and just, such transfers are upheld. This question, we think, was ably discussed and properly disposed of in *Farmers & Merchants Nat. Bank v. Mosher*, 63 Neb. 130, and the principles underlying the conclusion which we have reached need not again be set forth here at greater length.

At a former trial the plaintiff herein testified that the rents in controversy were assigned to him by the Lintons for the benefit of their children. Had they been assigned solely for the benefit of the junior Lintons, much doubt would exist as to the legality of the assignment, but from

the whole case it appears that the plaintiff herein was employed by the Lintons, not only to protect the interests of their children, but their own. This evidence is insufficient to brand the transaction as fraudulent. In *Farmers & Merchants Nat. Bank, v. Mosher, supra,* the contract of employment in controversy was made in part on behalf of the assignor's wife.

The judgment of the lower court on the evidence of this case should have been for a dismissal of the petition of the interveners and for the payment of the fund in controversy to the plaintiff.

We recommend that the judgment of the lower court be reversed and this cause remanded for further proceedings.

DUFFIE and GOOD, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the lower court is reversed and this cause remanded for further proceedings.

REVERSED.

FAWCETT, J., not sitting.