Hillsborough, }
March 2, 1915. }

FOURTH NATIONAL BANK *v.* MANCHESTER REAL ESTATE AND
MFG. CO. & *a.*

Although dividends upon stock pledged as collateral security are the property of the pledgee, the parties to the contract may agree that they shall be drawn and held by the pledgor; and until a transfer of the stock be requested, a corporation without knowledge of the pledge may rightfully pay dividends to the shareholder of record.

A corporation is not chargeable with knowledge of a pledge of its stock by the president in his individual capacity, as part of a transaction in which the company has no interest.

The failure of a pledgee of corporate stock to ask for a transfer of the shares or demand the first dividend payable after the date of the pledge is not a waiver of his right to a subsequent dividend held in the treasury of the corporation, for which a formal demand was made.

Where a pledgor of stock assigns the future dividends thereon, his assignee without knowledge of the pledge acquires title to a dividend paid to him prior to a demand upon the corporation by the pledgee, but has no right to a dividend held by the company after such demand.

ASSUMPSIT, to recover dividends upon 211 shares of stock in the defendant corporation. Trial by jury and verdict for the plaintiffs. The defendants' motion for a nonsuit and the motions of both parties for the direction of a verdict in their favor were denied, subject to exception. Transferred from the September term, 1913, of the superior court by *Kivel*, J. The evidence tended to prove the facts hereinafter stated.

Prior to 1902, William M. Mason and Samuel H. Mead, one of the defendants, were with others engaged in business under the name Mead, Mason & Co. In that year the Manchester business of the concern was taken over by the Manchester Real Estate and Manufacturing Company, a corporation organized under the laws of Maine. Mason was a nephew of Mead, and their relations were very close. Mason was president of the defendant corporation, Mead was treasurer, and both were directors of the company and managers of its business. The stock upon which the dividends are claimed was originally issued to Mason. March 26, 1910, Mason was indebted to the plaintiffs upon his personal indorsement of the notes of Mead, Mason & Co., of which firm the defendant Mead was not then a member; and at the request of the plaintiffs, who were

then demanding payment or security, Mason deposited with them the certificates for the stock in question, duly indorsed in blank, as collateral security for such indebtedness.

July 8, 1911, the plaintiffs wrote Mead as follows: "This bank is the collateral holder of 211 shares of your company. We are desirous of ascertaining the value of the shares, and in order to arrive at an intelligent opinion will thank you if you take the trouble to give us the different lots of real estate held, the assessed value of the same, and the probable amount that can be realized on the shares." Mead testified that until the receipt of the foregoing letter he had no knowledge that Mason's 211 shares of stock were pledged as collateral. July 12, 1911, the plaintiffs notified Mason that the collateral would be sold unless the loan was paid; and payment not being made, on October 4 they sold the stock to George W. Newhall. October 5, Mead was requested to transfer the stock, but declined upon the ground that the books were closed until November 1, when the stock was duly transferred and new certificates were issued. November 29, the plaintiffs made demand on Mead for the dividend declared September 25, but no reply was made to their letter. This suit was brought for the dividend of September 25, and an amendment was filed in April, 1913, to include the dividend of March 29, 1910.

Mead claimed to be entitled to the dividends by virtue of an assignment to him by Mason of the dividends due and to become due on all stock standing in the latter's name upon the books o: the corporation, said assignment being dated April 22, 1910. The dividend of March 29, 1910, was credited to Mead's account on June 30, 1910. The dividend of September 25, 1911, is still in the treasury of the corporation. The defendants excepted to the refusal to charge the jury that if the plaintiffs did not expect the dividends when they took the stock as collateral, that would be a waiver of their right thereto.

*Taggart, Burroughs, Wyman & McLane (Mr. Wyman orally),* for the plaintiffs.

*Jones, Warren, Wilson & Manning (Mr. Manning orally),* for the defendants.

PARSONS, C. J.   The plaintiffs, as pledgees of stock as collateral security, sue for two dividends declared on the stock after the date of the pledge.   The first dividend was paid over by the defendants

upon the order of the stockholder of record; the second is now in the hands of the corporation.     It is conceded in argument that dividends upon stock pledged as collateral are the property of the pledgee. *Meredith Village Savings Bank* v. *Marshall*, 68 N. H. 417.     But the parties to the contract of pledge may agree that the dividends may be drawn by the pledgor and held as his property.     *Guarantee Co.* v. *Company*, 96 Ga. 511; *Farmers etc. Bank* v. *Mosher*, 63 Neb. 130, 138. By the law of this state and that of the place of the corporation's organization, the unrecorded transfer of the stock certificates did not affect the right of the corporation to pay the dividends to the stockholder of record.     P. S., *c.* 149, *s.* 14; Laws 1887, *c.* 16; Maine R. S., *c.* 47, *s.* 35; *Meredith Village Savings Bank* v. *Marshall*, 68 N. H. 417.

It is said that the pledgor was president of the corporation and knew of the pledge, and hence that the corporation had notice. But it must be assumed that the contract of pledge was made in view of the statutory provisions cited, and, in the absence of evidence to the contrary, that it was understood that until a transfer of the stock was at least asked for the corporation might pay the dividends to the pledgor.     If as between Mason and the bank, it was understood that the dividends should be paid to Mason, the knowledge of Mason, if imputable to the defendant corporation, would not require the defendants to withold the dividends from him.     If such was not the mutual understanding, Mason, in witholding from the corporation knowledge of the transfer so as fraudulently to obtain payment of the dividends to himself, was interested adversely to the corporation.     Neither was the knowledge sought to be charged to the corporation obtained by Mason while acting for the defendants.     Hence the defendants are not chargeable with his knowledge. *Clark* v. *Marshall*, 62 N. H. 498, 500, 501; *Brookhouse* v. *Company*, 73 N. H. 368, 374; *Warren* v. *Hayes*, 74 N. H. 355.     A verdict should have been ordered for the defendants as to the dividend declared March 29, 1910.

The defendants still hold the dividend of September 25, 1911. The stock has been transferred.     The only defence to the claim for this dividend is that on April 22, 1910, Mason assigned to S. H. Mead all dividends due or thereafter to become due upon all stock standing in his name, which included the stock in question then held by the plaintiffs, and that the plaintiffs had waived their right to dividends.     The evidence of waiver relied upon is the failure of the plaintiffs to ask for transfer of the stock or to demand the dividends.     But it is not necessarily to be inferred from the failure of the

plaintiffs to demand the first dividend before it was paid that they waived their admitted right to the second dividend which they did demand before payment.

As the plaintiffs from the prior transfer of the stock were entitled to the dividend should they demand it, Mason's assignment of future dividends gave Mead no right as to the second dividend, after the demand. As the case is transferred, the suit is between the plaintiffs and the defendant corporation. The record speaks of the defendant S. H. Mead, and it appears from the argument that S. H. Mead, to whom the first dividend was paid upon Mason's order, was a defendant to the suit and that the jury returned a verdict for him, and it appears also to be admitted that the plaintiffs excepted to a refusal to order a verdict for them against Mead.

In *Meredith Village Savings Bank* v. *Marshall*, 68 N. H. 417, the pledgee of stock held as collateral security was permitted to recover of the pledgor's administrator, "the question of the rights of third parties without notice" not being presented. There was evidence that Mead had no knowledge of the pledge of the stock to the plaintiffs, that there was no constructive notice from the record, and that there was a consideration for the assignment to Mead in his indorsement of a note of Mead, Mason & Co., upon which he has since paid the interest and upon which he is still liable. The plaintiffs received the stock as collateral for a preëxisting debt. Upon these facts it could be found that the legal title to the money passed to Mead, that his equitable title was equal, if not superior, to the plaintiffs', and that the plaintiffs, having assented to the payment to Mead of the first dividend, are estopped to question his disposition of it. No ground appears upon which to disturb the verdict for Mead. Whether the plaintiffs can recover this dividend of Mason is not now in issue.

The first dividend should be struck out of the verdict. The exception to the instructions given has not been argued and does not appear to be material. As there was no evidence from which it could be found that the plaintiffs were estopped to demand any dividends, the request for instructions substantially to that effect were properly denied. The plaintiffs' exceptions are overruled. The defendants' exception to the refusal to order a verdict for them as to the first dividend is sustained; their other exceptions are overruled.

*Case discharged.*

All concurred.