# Baar et al. v. Fidelity & Columbia Trust Co.

Jan. 29, 1946.

Ogden, Galphin, Tarrant & Street, Squire R. Ogden and D. L. Street for appellants.

Bullitt & Middleton and Leo Wolford for appellees.

OPINION OF THE COURT BY VAN SANT, COMMISSIONER —Reversing.

Until thirteen days before her death on July 29, 1930, Barbara Davis, a resident of Chicago, was the owner and holder of certain participation certificates issued by appellees, trustees of an indivisible trust estate which was created by agreement of the stockholders of the Citizens Union National Bank and appellee, Fidelity and Columbia Trust Company. By the terms of Mrs.

Davis's will, her daughter, Edith D. Leterman, was entitled to receive one-third, her daughter, Florence C. Davis, one-third, and each of her granddaughters, Maxine D. Getty and Florence R. Davis, one-sixth of her estate. Florence C. Davis was appointed administratrix with the will annexed. In her settlement as administratrix, Miss Davis failed to list certain property, including the participation certificates hereinbefore referred to, as an asset of the estate. The administratrix and her sister, Mrs. Leterman, claimed to be the joint owners of the certificates under assignments purported to have been executed by their mother on July 16, 1930. The granddaughters sued Mrs. Leterman and Miss Davis in Chicago, claiming that the signatures purporting to assign the certificates were forged or had been procured by fraud and undue influence, and that at the time Barbara Davis did not have mental capacity to make the assignments. In compromise of the Chicago litigation, certain assets of the estate were placed in trust with appellants, Arnold R. Baar and John Campbell, as trustees under a trust agreement dated December 31, 1934, and which authorized them to dispose of the trust property, included in which were the participation certificates hereinbefore referred to; and with the direction that the assets of the trust estate be sold, or otherwise disposed of, and a distribution be made thereof in the following manner: The first Thirty Thousand Dollars ($30,000) over and above the expenses of the trust estate to be paid to the two granddaughters, the balance to be paid to the daughters. In consideration of this agreement, the granddaughters assigned to the daughters their interests in the remaining property of the estate. On January 3, 1935, appellants notified the appellee trustees that the participation certificates had been assigned to them as trustees, for the purpose of sale and distribution. The appellees were requested to assist appellants in selling the shares represented by the certificates. More than fifty letters were exchanged between the parties, in an endeavor to carry out the request. The principal barrier to the culmination of the desire of the parties to dispose of the shares was the failure of the parties to determine the procedure to be followed in order to put the certificates in the form requisite to transfer on the books of appellees. In the meantime, although they had been notified of the change in ownership, appellees continued to pay dividends, fourteen in

number, to Florence C. Davis, as administratrix of her mother's estate. Appellants did not specifically request appellees to withhold the dividends from the administratrix or to pay the dividends directly to them.

This suit was instituted the eleventh day of August, 1938, by appellants, by which they asked the Court to declare them to be the owners of the participation certificates and entitled to receive the dividends thereon, and for recovery of all dividends paid the administratrix of Barbara Davis's estate after the notice of January 3, 1935, of the change in ownership of the certificates. The Chancellor declared appellants to be the owners of the certificates and entitled to all dividends which had not been paid to the administratrix; but denied recovery for the amount of dividends which appellants alleged were wrongfully paid to the administratrix. The correctness of the Chancellor's determination in respect to the claim for the alleged wrongful payment of the dividends is the sole question for our determination.

It is the contention of appellants that notice of the change in ownership in itself, without a specific request for the payment of dividends, was sufficient to require appellees to pay the dividends to appellants, or at least not to pay them to the previous owner of the certificates. It is the contention of appellees that, since the certificates were never in transferable form, it was impossible for them to transfer the certificates on the books of the appellee trustees, and that it was their duty, until such transfer was made, to pay the dividends to the holder of the certificates as recorded on the transfer book.

The precise question heretofore has not been presented to this Court; but the law is well settled by all courts of last resort, and without exception so far as we have been able to determine, that a corporation (or trustee), after notice of transfer of its stock, becomes liable to the transferee for dividends paid to the person in whose name the stock is registered, although the transfer has not been registered on the corporation's or trustee's books. In Thompson on Corporations, Third Edition, vol. 7, Sec. 5323, the rule is stated:

"But payment of dividends to an unauthorized person will not protect the corporation as against the claim of the person rightfully entitled thereto. And if a cor-

poration, after notice of transfer, pays the dividends to the person in whose name the stock is registered, it becomes liable to the transferee, whether the transfer was a sale or as collateral security, although the transfer was not registered.''

In Fletcher Cyclopedia Corporations, Vol. 12, Sec. 5499, the rule is expressed:

''Since an unregistered transfer is good as between the parties, whether it be regarded as passing the legal title to the shares, or merely an equitable title, as between them, the transferee, in the absence of agreement to the contrary, is entitled to all dividends declared after the transfer, even though the transfer is not registered, in the absence of some statutory provision to the contrary. If the corporation has notice of the transfer, and afterwards pays dividends to the transferor, the transferee may hold it liable.''

The rule has been followed in Homestake Oil Co. v. Rigler, 9 Cir., 39 F. 2d 40; Bloomington Cotton-Oil Co. v. First National Bank, Tex. Civ. App. 56 S. W. 552; Steel v. Island City Mercantile & Milling Co., 47 Or. 293, 83 P. 783; Guarantee Co. of N. A. v. East Rome Town Co., 96 Ga. 511, 23 S. E. 503, 51 Am. St. Rep. 150; Hill v. Atoka Mining Co., Mo. 21 S. W. 508; Central Nebraska National Bank v. Wilder, 32 Neb. 454, 49 N. W. 369; and others too numerous to cite. In the last styled case, Wilder sued the Bank to recover dividends on the bank stock which had been assigned to him to secure a debt. No transfer of the stock had been requested, but the Bank had knowledge of the assignment. The Bank's defense was the same interposed by appellees in this case. The Court said:

''The principal defense of the bank is a by-law of the corporation, by which all transfers of stock are to be made on the books of the bank, and it is claimed that, as the stock in question stood on such books in the name of M. Gould, a payment to him of the dividend in question exonerated the bank from paying to the defendant in error. A bank or other corporation, like a natural person, must act in good faith with those with whom it deals. It cannot shut its eyes to the clear light of day, and declare that darkness prevails; and no more can it ignore facts as to the rights of persons dealing with it, and claim exemption on the ground of any technical rule

which will work injustice. In other words, if stock of a bank has been assigned to a party who is holding the same as security, and is entitled to the dividends on such stock, the bank must pay the dividend to the party entitled to it,—the actual owner of the stock,—if it has notice.''

It should be conceded that appellants had not conformed to the procedure necessary to compel the trustees to transfer the certificates of stock in question to them on the books of appellees; likewise, appellees had the right to withhold the payment of dividends from appellants until such transfer could be made. But those rights could not be extended to permit appellees, after notice that appellants were claiming ownership of the stock, to pay the dividends to the transferor, even though she appeared to be the owner of the certificates on the transfer books of appellees. Appellees are not protected by the regulation adopted by them, which provides:

''The possession of a Certificate shall not vest ownership of the shares represented thereby in any person other than the one in whose name the Certificate is issued as between the Trustees and such holder until the transfer of said shares is duly made on the books of the Trustees.''

Nor does the rule contravene KRS 271.160, which provides:

''The shares of stock shall be transferred on the books of the corporation in such manner as the bylaws thereof may direct, and every person becoming a stockholder by such transfer shall, in proportion to his shares, succeed to all the rights and liabilities of prior stockholders.''

This provision of the Statutes can not be invoked to relieve appellees of liability for wrongfully paying dividends to a previous owner of the stock, after they came into the knowledge of the transfer.

The judgment is reversed, with directions that another be entered in conformity with this opinion.