[No. 2113. Decided April 23, 1897.]

GEORGE F. VIETOR et al., Appellants, v. JAMES N. GLOVER et al., Respondents.

<div style="float:right">17   37<br>s21  678</div>

PARTNERSHIP — RIGHTS OF CREDITORS — INSOLVENCY — PREFERENCES — FRAUD — ASSIGNMENT FOR BENEFIT OF CREDITORS.

A partnership creditor, as such, has no lien upon, or right to priority in, partnership property, but merely has the right to reduce his claim to judgment and to sell the partnership property on execution.

Partners, although insolvent, have a right to transfer partnership property to any creditor or class of creditors, in payment of bona fide indebtedness, if such disposition of the property is made merely as a preference, and not for the purpose of delaying or defrauding other creditors.

Where partners are jointly liable, they may transfer partnership property to pay such liability, even though it was incurred outside of the partnership business.

Where a conveyance is made by a debtor for the payment of several debts, some valid and others fraudulent, and the parts are clearly severable, the conveyance will be sustained as to those creditors holding valid claims.

A conveyance by a debtor in embarrassed circumstances of all his property for the payment of certain preferred creditors does not amount to a general assignment with preferences, which is voidable under the insolvency statutes of this state.

Appeal from Superior Court, Spokane County.—Hon. JAMES Z. MOORE, Judge. Affirmed.

*Samuel R. Stern, Cyrus Happy,* and *W. W. Tolman,* for appellants.

*L. B. Nash,* and *Lucius G. Nash (Dolph, Mallory & Simon,* and *John M. Gearin,* of counsel), for respondents.

The opinion of the court was delivered by

ANDERS, J.—On January 2, 1895, a firm composed of Bernhard and Herman Loewenberg, engaged in mercantile business at Spokane, Washington, transferred to one James N. Glover, as trustee, all their firm and individual property, both real and personal. Contemporaneously with this conveyance, Mr. Glover executed and delivered what was termed a declaration of trust, in which he recited that he held the property for certain banks and persons who were creditors of Loewenberg Bros. in amounts specified, and that he was to sell the property conveyed to him and out of the proceeds thereof pay the claims in a certain order therein indicated. Thereafter, and while the property was in the possession of the said Glover, plaintiffs herein, who were, respectively, creditors of Loewenberg Bros., commenced actions against the said firm to recover the respective amounts alleged to be due them. In each of these actions an attachment was sued out and levied upon the property in the possession of said Glover, and, subsequent-

ly, this action was brought, in aid of the attachments, to set aside the transfer to the trustee, Glover, on the ground that the same was a fraud upon the plaintiffs and other creditors of the firm, for the reason, among others, that it was made to hinder, delay and defraud the creditors of the said firm, and especially the plaintiffs. The defendants answered alleging that the transfer of the property was not made, or the property received by them, to hinder or delay the plaintiffs, or any other creditor or creditors, but for the sole purpose of paying honest debts due them by Loewenberg Bros. and by B. and H. Loewenberg, and that the promissory notes evidencing their respective debts had been delivered to said Loewenberg Bros. and canceled, and praying that the proceeds of the property be distributed in accordance with the terms of the agreement and conveyance. Upon these issues the cause proceeded to trial, and judgment was rendered for the defendants dismissing the complaint with costs. From this judgment this appeal is taken.

It appears from the evidence that the debts for which the property was transferred were of long standing, and that the notes representing some of them had been renewed from time to time, with the consent of the payees. Some of the debts were in existence even while Julius Loewenberg was a member of the firm of Loewenberg Bros., which was prior to October 1, 1893. But the later firm of Loewenberg Bros. recognized these debts as its own, although at least two of the notes were not signed by the firm, but were, upon their face, the notes of the individual partners.

Many interesting points are made and discussed in the learned and elaborate brief of counsel for appellants, but they are all practically included in, or illustrative of, the general proposition urged, that appellants, being creditors of the firm of Loewenberg Bros. as it existed at the time

of the transfer complained of, are entitled to priority of payment out of the firm assets over the joint creditors of the individual partners as well as the creditors of the preceding firm, and that the conveyance to respondent Glover is, therefore, as to them, fraudulent and void. The equitable rule contended for on behalf of appellants only applies where the court is called upon to administer and distribute partnership assets, or where its jurisdiction to set aside a conveyance for fraud in fact has been successfully invoked by firm creditors. A partnership creditor, merely as such, has no right in, or lien upon, partnership property. He merely has the right to sue and reduce his claim to judgment, and to sell the partnership property on execution.

Lindley, Partnership (2d Am. ed.), pp. 334, 354; Bates, Partnership, §§ 820, 824; *Case v. Beauregard*, 99 U. S. 119; *Fitzpatrick v. Flannagan*, 106 U. S. 648 (1 Sup. Ct. 369); *Huiskamp v. Moline Wagon Co.*, 121 U. S. 310 (7 Sup. Ct. 899); *Schmidlapp v. Currie*, 55 Miss. 597 (30 Am. Rep. 530).

But each partner has the right in equity, often denominated a lien by courts and text writers, to have the firm property applied to the satisfaction of the firm debts, and so long as this equity subsists, the courts allow the creditors of the firm to avail themselves of it, on the principle of subrogation, whenever the property is "within the control of the court and in course of administration." *Case v. Beauregard, supra.*

But this equity, or lien, or whatever else it may be called, is primarily for the benefit and protection of the individual partner, and not the creditors. The partner may, therefore, waive it, and if he does so, the resulting equity of the creditor is absolutely destroyed. Moreover, this right attaches only to partnership effects, and hence,

" if before the interposition of the court is asked the property has ceased to belong to the partnership, if by a *bona fide* transfer it has become the several property either of one partner or of a third person, the equities of the partners are extinguished, and consequently the derivative equities of the creditors are at an end. It is, therefore, always essential to any preferential right of the creditors that there shall be property owned by the partnership when the claim for preference is sought to be enforced." *Case v. Beauregard, supra,* 125.

The doctrine thus announced is affirmed in the other cases cited from the same court, and is, undoubtedly, correct on principle.

The controlling question, therefore, in any particular case is, whether or not the transfer of the property is *bona fide.* The evidence shows, and it is not denied, that, at the time of the transfer, both the firm and the individual members thereof were insolvent, but that alone did not destroy the right to dispose of its property in good faith and for an honest purpose. If a firm that is in debt could not sell or otherwise dispose of its property, it might never be able to pay its debts at all, and it would be difficult, if not impossible, for it to conduct its business, for it could not give a good and clear title to any specific chattel it might sell, and the purchaser of any partnership commodity would be obliged to take it subject to the lien of creditors possibly unknown to him. It is useless to observe that no such doctrine has ever been announced by the courts. But the general right of disposition is limited by the principle that the firm shall not alienate its property for the purpose of delaying or defrauding its creditors.

It is the established law of this state that an individual, although insolvent or in failing circumstances, may pay or secure one or more creditors to the exclusion of others

equally meritorious, even if by so doing he exhausts the whole of his property. *Turner v. Iowa National Bank,* 2 Wash. 192 (26 Pac. 256); *Ephraim v. Kelleher,* 4 Wash. 243 (29 Pac. 990); *Benham v. Ham,* 5 Wash. 128 (31 Pac. 459); *Furth v. Snell,* 6 Wash. 542 (33 Pac. 830); *Samuel v. Kittenger,* 6 Wash. 261 (33 Pac. 509).

The manner of giving the preference is immaterial. It may be given by deed, or in any mode which effects a legal transfer of the property. Bump, Fraudulent Conveyances (3d ed.), p. 186.

And partners, in this respect, have the same rights that individuals have.

" Partners, the same as others, may, by a sale or mortgage of the partnership property, give a preference to their creditors. If a sale or mortgage is made in good faith, to secure a *bona fide* debt or debts, the transaction cannot successfully be assailed on the ground that the creditors preferred were the individual creditors of the several partners." George, Partnership, p. 278.

The right to prefer manifestly involves the right to designate the creditors, or class of creditors, to be preferred; and it therefore follows that the only ground on which the unpreferred creditors can justly complain is that the claims of the preferred creditors are not *bona fide* and real. The mere preference of a particular creditor or class of creditors over others by a debtor is therefore not fraudulent, because it is legal, and what the law sanctions cannot rightfully be questioned.

But it is urged on behalf of appellants that in no event could Loewenberg Bros. convey the firm property in payment of the notes which were signed by the individual partners, and which were not in the firm name. It does not appear whether the money evidenced by these notes was used for firm purposes or not; but there is very high authority to the effect that, where the partners are jointly

liable, they may transfer property to pay such liability even though it was incurred outside of the partnership business. Bump, Fraudulent Conveyances (3d ed.), p. 390; *Smith v. Howard*, 20 How. Pr. 121; *Saunders v. Reilly*, 105 N. Y. 12 (12 N. E. 170, 59 Am. Rep. 472).

In the case last cited the court, at page 18, says:

"All the members of a firm may sell the partnership property, even if wholly insolvent, to a purchaser in good faith, and thus convey, free from the claim of firm creditors, a good title to the firm property. Instead of selling for cash they may transfer firm property to pay a firm debt. And they may transfer the firm property to pay a joint debt for which they are jointly liable outside of the business of the firm, and the joint creditor will obtain a good title to the firm property."

See, also, *Hoare v. Oriental Bank*, 2 App. Cas. 589.

And the same conclusion would seem logically to follow from decisions of the supreme court of the United States in the cases to which we have above referred.

It is insisted that the note for $31,000 held by the London & San Francisco Bank, one of the preferred creditors, was fraudulent as to appellants, for the alleged reason that it was given without consideration and was void, and that the conveyance to the trustee was therefore fraudulent as to the unpreferred creditors. Julius Loewenberg, a former member of the firm of Loewenberg Bros., sold his interest to the remaining partners on October 1, 1893, but it was agreed between him and his partners, who continued in business under the firm name of Loewenberg Bros., and retained all of the assets of the preceding firm, that he should not draw out anything for one year thereafter. After the year had expired this note was given him for his one-third interest, and he indorsed and delivered it to the bank as collateral security for a debt which he owed to the bank. It is claimed that, inasmuch as the firm was insolv-

ent at the time Julius Loewenberg sold his interest and retired, the note was without consideration and void, even in the hands of the bank. It must be borne in mind, however, that at the time the debt represented by this note was contracted, appellants were not creditors of the firm of Loewenberg Bros., and it is therefore difficult to perceive how they were defrauded by the transaction. The existing creditors might have had reason to complain, but they did not do so, and are not doing so now. But even conceding the note to be void and fraudulent, yet it does not necessarily follow that the transfer should be set aside as to the creditors whose claims are confessedly just and valid. If this particular note were invalid, which we do not think is the fact, the conveyance should nevertheless be sustained as to the other claimants because the parts are clearly severable.

The true rule, we think, is announced in Smith's Leading Cases (9th ed.), at page 78, where it is stated that:

" It is a general rule that any conveyance which is fraudulent as to a part of the property transferred, or which is made upon a consideration partly fraudulent, is wholly void as to the grantor's creditors, but the validity of a conveyance as against creditors, where the parts are severable, cannot depend upon this test. If it is made for the payment or security of several debts, some valid and the others fraudulent, it will be avoided as to the latter, but sustained as to the former, in the absence of any fraud on the part of those beneficiaries."

Nor does the conveyance in question amount to a general assignment with preferences, under the insolvent law of this state, as suggested by counsel for appellants. See *Furth v. Snell, supra*; *Puget Sound National Bank v. Levy*, 10 Wash. 499 (39 Pac. 145, 45 Am. St. Rep. 803).

A careful examination of all the evidence in the case convinces us that the respondents, that is, the preferred

creditors, acted in perfect good faith and solely from a desire to secure the payment of their debts, and therefore the transfer was not *mala fide* on their part, whatever may have been the secret motives or intention of Loewenberg Bros. The property the creditors received falls far short of paying the full amount of their claims, but they have surrendered their notes for cancellation, and are therefore in our opinion entitled to retain what they have lawfully received. But, of course, they have no right to keep property transferred to them by the Loewenbergs, which the latter did not themselves own, if any such was received by them; and therefore nothing we have said in this opinion will in any way affect whatever rights the plaintiff in the case of *Woonsocket Rubber Co. v. Glover, ante,* p. 29, may have to the specific merchandise therein claimed by it.

The judgment is affirmed.

SCOTT, C. J., and GORDON, J., concur.