(No. 5286. Decided May 23, 1905.)

C. E. McAVOY, *Respondent,* v. I. H. JENNINGS, *Appellant.*[1]

APPEAL AND ERROR—TRANSCRIPT—TIME FOR FILING—DISMISSAL. The filing of the transcript within ninety days is not jurisdictional, and an appeal will not be dismissed for failure to file the transcript within such time, when filed before the motion to dismiss was made.

ASSIGNMENT FOR BENEFIT OF CREDITORS — GARNISHMENT OF ASSIGNEE—ANSWER—MOTION FOR JUDGMENT—AMENDMENT—CONSENT OF CREDITOR. Upon a motion for judgment on the answer of a garnishee, which admitted that he held the property of the principal defendants as a trustee for the benefit of all the creditors under a written assignment, the answer, in the absence of demurrer or motion, should be treated as amended to allege that the assignment was made at the instance of the plaintiff, thereby precluding the plaintiff from attacking the assignment as fraudulent, and raising an issue of fact; hence judgment on the pleadings against the garnishee is erroneous, notwithstanding a reply by the plaintiff denying the plaintiff's consent to the assignment.

Appeal from a judgment of the superior court for King county, Albertson, J., entered January 20, 1904, in favor of the plaintiff against a garnishee, upon motion for judgment on the pleadings. Reversed.

*Leopold M. Stern,* for appellant.

*Roberts & Leehey,* for respondent.

[1] Reported in 81 Pac. 77.

MOUNT, C. J.—On November 19, 1903, M. J. Harkins, L. W. Harkins, and E. E. Harkins, copartners under the firm name of the "Harkins Company," executed the following agreement in writing:

## "BILL OF SALE.

"This Indenture, made this 19th day of Nov., 1903, by and between E. E. Harkins, L. W. Harkins and M. J. Harkins, of Seattle, Washington, doing business under the firm name and style of the Harkins Co., parties of the first part, and I. H. Jennings, of Seattle, Washington, party of the second part,

"WITNESSETH: That, whereas, the parties of the first part have, for some time past, been carrying on a general grocery business at No. 1501, 14th Avenue, in Seattle, Washington, and are owners of a general stock of groceries, fixtures, three horses, two wagons, and a large number of book accounts, contracted in the course of said business, and also a leasehold interest in said premises; and whereas, the said parties of the first part, in the conduct of said grocery business, have become indebted to various persons and firms, which persons and firms are enumerated in the list of the creditors hereto attached, and in the amounts set opposite their respective names; and whereas, the said parties of the first part desire to pay each of said persons and firms mentioned in said list equably and ratably; and whereas, the said party of the second part is willing to receive a bill of sale of the said stock of general merchandise, fixtures, horses, wagons and harnesses, and an assignment of all book accounts and of the leasehold interest in and to the said premises, and is willing to sell all of said personal property of said leasehold interest, and to collect said book accounts; and after deducting the expenses of administering this trust, to apply the balance to the proceeds arising from said sale and such collections, equably and ratably to the claims of all creditors mentioned in the list of creditors hereto attached;

"Now, know all men, by these presents, that the said parties of the first part, for and in consideration of the sum of one dollar in hand paid to the parties of the first part by the party of the second part, and other good and valu-

able considerations, to be paid as hereinafter specified, do hereby grant, bargain, sell and convey and deliver unto the said party of the second part the entire stock of goods, wares, and merchandise, and all fixtures contained in the store building located at No. 1501, 14th Avenue, in Seattle, Washington, together with the good will of said business, and also the right to immediate possession thereof. Parties of the first part also sell to the said party of the second part the said horses, wagons, and harnesses, and hereby assign and transfer to said party of the second part all outstanding book accounts as the same appear upon the books of accounts kept by said parties of the first part; parties of the first part also assign and transfer all their right, title and interest in and to the lease upon said premises.

"To have and to hold the said personal property abovementioned, together with the book accounts and good will of said business, unto the said party of the second part, his heirs, executors, administrators and assigns, in trust for the uses and purposes hereinafter mentioned; that is to say, in trust to take immediate possession of all of said personal property, and to sell the same collectively or separately at public or private sale, as he may deem best; and to collect, sell or compromise all of said outstanding book accounts; and after deducting the expenses of administering the said estate, to apply the proceeds remaining, equably and ratably, among the creditors of the parties of the first part enumerated in the list of creditors hereto attached; provided, however, that each creditor, before being entitled to receive his pro rata under the terms of this agreement, shall deliver to the party of the second part, a release of all claims against the said parties of the first part.

"It is expressly agreed that this conveyance shall not be construed to be a deed of voluntary assignment under the laws of the state of Washington.

"In witness whereof, the said parties of the first part have hereunto set their hands and seals," etc.    (Duly signed.)

To this instrument was attached a list of creditors for whose benefit the transfer was made. Immediately upon the execution of this agreement, Mr. Jennings took posses-

sion of all the property therein mentioned, and afterwards
sold the tangible property, and proceeded with the collection
of the book accounts. The American Savings Bank & Trust
Company was one of the creditors named in the list at-
tached to the instrument above copied. After the transfer
to Jennings had been made, the bank assigned its claim to
McAvoy, the respondent, who thereupon commenced an
action in the superior court of King county to reduce the
claim to judgment against the members of the Harkins Com-
pany. In that action McAvoy caused Jennings to be sum-
moned as a garnishee defendant.

Jennings appeared in the garnishment proceedings and
answered, denying that he was indebted to said copartner-
ship, or any member thereof, and denying that he had any
property in his possession or under his control belonging to
defendants in the action; and, by way of further answer,
he set forth the trust agreement above copied, and alleged
that he had taken possession of all the property therein
stated, and had converted the same into money, and that
he had in his possession the sum of $854.02, which he was
prepared to distribute pro rata among the creditors in ac-
cordance with the said agreement. He also alleged that the
total of the debts amounted to $3,200.

The plaintiff in the garnishment proceedings, without
moving against the answer of the garnishee, filed a reply
denying all the allegations in the answer, and alleged that
the agreement and transfer of the property therein described
was fraudulent and void as to creditors, because it was not
in compliance with the sales-in-bulk act, for the reason that
the sale was without consideration and there was no affidavit
of the vendors setting out the names of all the creditors
and the amount due each. The reply also alleged that the
transfer was made without the consent of all the creditors,
and without the knowledge, consent, or ratification of the
plaintiff, or his assignor.

After this reply was filed, the plaintiff moved the court

for a judgment against the garnishee upon his answer, and upon the pleadings in the case. The garnishee also moved for a discharge upon like grounds. The court, upon a hearing of these motions, granted the motion of the plaintiff, and rendered judgment against the garnishee for $576, which was the amount of the plaintiff's claim against the copartnership of the Harkins Company. Mr. Jennings, the garnishee defendant, appeals.

Respondent moves to dismiss the appeal because no transcript was filed in the clerk's office within ninety days after the notice of appeal. The notice of appeal was filed on April 20, 1904. The transcript was filed on August 27, 1904. The motion to dismiss was not made until after the transcript had been filed. We have frequently held that the failure to file the transcript within ninety days is not jurisdictional. *Ellis v. Bardin,* 36 Wash. 122, 78 Pac. 677, and cases cited. See, also, *Dean v. Oregon R. & Nav. Co.,* 38 Wash. 565, 80 Pac. 842. The motion is denied.

Conceding, for the purposes of this appeal, that the act relating to sales of stocks of merchandise in bulk applies to the transfer in question in this case, and also that the transfer is void as to creditors not parties thereto, without intending to decide either of these questions, the judgment of the lower court must still be reversed. The appellant, in answer to the writ of granishment, denied that he was indebted to the partnership or any member thereof, and denied that he had any property in his possession or under his control belonging to the partnership or any member thereof; then, by way of affirmative defense and "in explanation" of his answer, set up the assignment to him, and alleged that, under the trust deed, he had in his possession $854.02 to be distributed pro rata among the creditors, one of whom was the plaintiff or his assignor. It is true that the affirmative answer did not allege directly that the assignment was made at the instance of the plaintiff or his assignor, or that the

8—39 WASH.

plaintiff had notice thereof and acquiesced therein and ratified the same, but the answer was not attacked upon that ground. If respondent had moved against the answer by demurrer, the appellant would have been authorized to amend in this respect. *Green v. Moore*, 24 Wash. 241, 64 Pac. 151. Respondent, however, filed a reply denying all the allegations of the answer, and treated the answer as having alleged that the transfer was made by and with the consent of the plaintiff; because it says, "and denies that said transfer was made with the consent of all the creditors and says that it was not made with the knowledge or consent of this plaintiff, or the American Savings Bank & Trust Company, a corporation, as assignor." This reply, of course, was not to be considered upon a motion of the plaintiff for judgment upon the answer. The only effect of the reply was to put in issue the facts alleged in the answer.

We must, therefore, upon this appeal, treat the answer as the lower court was required to treat it, as containing all amendments which could have been made. It is clear that, if the transfer of the partnership property was made to the appellant by the partnership at the instigation of the creditors, for the purpose named, the transfer was not void as between the parties. A creditor, who was a party to the transfer and at whose instance and for whose benefit the transfer was made, cannot be permitted to say that it was fraudulent as to him, or that, because it was fraudulent as to some other creditors, he may take advantage of his own wrong and thereby obtain a preference by attachment or garnishment. Under the pleadings in the case, there was a clear issue of fact, which should have been tried out in the regular way.

The judgment is reversed, and the cause remanded for further proceedings.

DUNBAR, HADLEY, and FULLERTON, JJ., concur.

RUDKIN, ROOT, and CROW, JJ., took no part.