[No. 7784.   Decided March 27, 1909.]

W. W. ZENT et al., Respondents, v. E. D. GILSON, Sheriff of Adams County, Appellant.[1]

FRAUDULENT CONVEYANCES—PREFERENCES.  A debtor in failing circumstances can prefer a creditor by mortgaging all his property to the exclusion of other creditors.

FRAUDULENT CONVEYANCES—TRANSFER FOR FUTURE SERVICES OF ATTORNEY—ATTACHMENTS—PRIORITY OVER BILL OF SALE.  Persons in the rightful possession of property, charged with the larceny thereof, may transfer the same to attorneys for services rendered and to be rendered in the defense of their persons and the property, to the extent of a reasonable fee, as against objection by prior creditors, and the same will not be held fraudulent as to such creditors subsequently levying attachments on the property, where the only question involved was as to the priority of the attachments over the bill of sale to the attorneys.

Appeal from a judgment of the superior court for Adams county, Kauffman, J., entered July 11, 1907, upon findings in favor of the plaintiffs, after a trial before the court without a jury, in an action for conversion.   Affirmed.

*Crow & Richardson* and *C. W. Rathbun,* for appellant.
*Martin & Wilson,* for respondents.

DUNBAR, J.—In March, 1907, James Brown and B. W. Masters were arrested at Ritzville, by the sheriff of Adams county, upon a complaint sworn to by F. E. Woods, president of Woods Lumber Company, a corporation of the state of Idaho, charging them with the larceny of certain horses and other personal property.   The said Woods Lumber Company also brought suit against Brown and Masters, and attached the property.   Before the levy was made under the attachment, Brown and Masters executed a bill of sale of the same property to W. W. Zent and H. N. Martin, attorneys at law.   They were employed to defend the charge of larceny, and also to prevent the extradition of said Brown

[1]Reported in 100 Pac. 739.

and Masters to the state of Idaho. After securing the bill of sale and placing it on record, demand was made upon the sheriff for the property, which was turned over to the plaintiffs. Afterwards the Woods Lumber Company directed the defendant to seize the property. The demand for the same having been made, the respondents brought an action for the value thereof. The case was heard without a jury, and a judgment for the value of the property, in the sum of $1,500, rendered in plaintiffs' favor. From this judgment this appeal has been taken.

Several assignments of error have been made, but it is conceded by the appellant that the sole question presented by the appeal is that of priority between the attachment under which the appellant holds the property, and the bill of sale made by Brown and Masters to the respondents. The appellant contends that the bill of sale is fraudulent and should not be allowed to stand against the attachment. There was no question as to the validity of the attachment, and it was admitted at the trial that the appellant held the property by virtue of the attachment. The question was raised by the offer of testimony showing that Brown and Masters had creditors in Idaho, and have no other property out of which the creditors could recover their claims.

The statement of the attorneys for the appellant, is that it is familiar law that a contract for future services is not a sufficient consideration for a transfer of property, when the effect of such conveyance deprives existing creditors of their right to subject the debtor's property to the payment of their claims; and quite a number of cases are cited to sustain this statement. An examination of these cases shows that most of them are cases where a creditor had conveyed all his property for the purpose of securing future support, and in the cases cited this was held to be a void conveyance as to bona fide creditors. The sixth case cited by appellant, viz., *Benedict, Hall & Co. v. Renfro Bros.*, 75 Ala. 121, 51 Am. Rep. 429, is a case involving only the question of whether a stock

of merchandise, which is mortgaged, where the mortgagor is allowed either expressly or by necessary implication to retain possession with a reserved power of sale over the mortgaged property, is void as against creditors, and it would seem to us has no bearing on the question under discussion.

But it can readily be seen that a different principle would be involved in the disposition of property for future support where the whole lifetime of the grantor is involved, from that in a case where an emergency has arisen in which a party is compelled to act, as in the employment of attorneys to protect his rights in a criminal action. In this state it is established that a debtor in failing circumstances may mortgage his entire property to secure bona fide debts to some of his creditors, and leave the debts due to other creditors unsatisfied. *Turner v. Iowa Nat. Bank*, 2 Wash. 192, 26 Pac. 256; *Vietor v. Glover*, 17 Wash. 37, 48 Pac. 788, 40 L. R. A. 297; *McAvoy v. Jennings*, 44 Wash. 79, 87 Pac. 53.

But, outside of this general proposition, the authorities seem to be uniform in sustaining the right of a debtor to convey his property to an attorney for legal services already rendered and to be rendered. In *Morrell v. Miller*, 28 Ore. 354, 43 Pac. 490, 45 Pac. 246, a case decided by the supreme court of the state of Oregon, and a case which is ably and extensively presented, it was held that the conveyance of Miller to his attorneys was not void. This seemed to be an extreme case, as will be shown by the following excerpt from the opinion:

"Miller was under arrest for a grave offense, then thought to be more serious than it afterwards proved to be, he being apprehensive that Morrell would die of the wound received at his hands. He had incurred a civil liability to Morrell because of the assault made upon him, and had previously transferred all of his property, of the aggregate value of five thousand five hundred and eight-five dollars and sixty cents, to Lord, for the purpose of securing his fees for services as

21—52 WASH.

an attorney, with a declaration of trust that the balance should be disposed of as he and Lord should agree. At the time of the execution of these deeds, Morrell was a creditor of Miller. . . . This being so, the plaintiff claims that the latter deed was fraudulent as to him as well as the first. There are some attendant *indicia* of fraud, such as the transfer of all of Miller's property of such considerable value to Lord; the declaration of a secret trust in connection therewith; and the inadequacy of consideration for the second deed. But, upon the other hand, Miller was deeply interested. He was in the toils of the law, charged with a grave offense, and his object was to extricate himself therefrom. The purpose of making such use of his property as to secure able counsel to conduct his defense, and to attend to other apprehended litigation, was perfectly legitimate. His right to be heard by counsel is a constitutional right, and he should be permitted, unless hindered by legal process, the free and untrammeled use of his property to obtain legal assistance, otherwise constitutional privileges would be invaded. Upon the whole, we believe the second deed was intended to be and operated as an absolute conveyance of the title to said premises, and we are unable to say from the evidence that it is fraudulent and void as to creditors."

The court, however, allowed the conveyance to stand only as security for the legal services, agreed upon between Miller and Lord and Mays and the firm of McGinn, Sears & Simon.

This case was cited with approval in *Farmers' & Merchants' Nat. Bank v. Mosher*, 63 Neb. 130, 88 N. W. 552, where it was held that an insolvent debtor had a right to employ attorneys to defend his estate and himself, and to transfer his property for that purpose, provided it was done in good faith and the property transferred did not exceed a reasonable fee for his services. The same rule is announced in *In re Disbarment of Luce*, 83 Cal. 303, 23 Pac. 350; *Cortland Wagon Co. v. Gordy*, 98 Ga. 527, 25 S. E. 574; *Drucker v. Wellhouse*, 82 Ga. 129, 8 S. E. 40, 2 L. R. A. 328; *In re Parsons*, 150 Mass. 343, 23 N. E. 50; and in fact there are no cases to the contrary that we have been able to find, when

applied to a conveyance for the purpose of securing attorney's fees.

So far as the question of future benefits is concerned, there are few transactions which do not contain an element of future benefits. As a rule, nothing is sold the proceeds of which are immediately absorbed in benefits, and it is not unreasonable to confer the right to a litigant who is in the rightful possession of property to use such property for the purpose of securing his legal rights. There being no question of fraud in this case, and it not being urged that the amount of attorney's fees claimed was not commensurate with the services rendered and to be rendered, the judgment of the court will be affirmed.

RUDKIN, C. J., MOUNT, CHADWICK, FULLERTON, and GOSE, JJ., concur.