DETERMINED IN THE

# SUPREME COURT

OF

# WASHINGTON

[No. 18319. Department Two. May 15, 1924.]

## Louis Hurwitz, *Appellant*, v. Matt Starwich, *as Sheriff of King County, Respondent*.[1]

FRAUDULENT CONVEYANCES (31)—PREFERENCES—ASSIGNMENT FOR CREDITORS. An insolvent debtor may prefer creditors by making a common law assignment in trust for the benefit of listed creditors or such as would execute a release of all claims against him.

SAME (91)—NATURE OF TRANSFER — FRAUD — EVIDENCE — SUFFICIENCY. Fraud as to creditors is a question for the jury and is not conclusively established by evidence that property, assigned for the benefit of preferred creditors to a common law assignee, was, on the same day, sold by the assignee to an uncle of the debtor.

SAME (89)—PREFERENCES—FRAUD—EVIDENCE—ADMISSIBILITY. In such a case, it is admissible to show facts existing prior to the assignment tending to show meetings of the principal creditors to devise the best method of closing up the affairs of the insolvent and finding a purchaser, and that the offer made and accepted was the best obtainable.

ASSIGNMENTS FOR BENEFIT OF CREDITORS (12)—PROPERTY CONVEYED —DESCRIPTION. In a common law assignment for the benefit of creditors, a videlicet describing the property as situated in the city of Spokane, does not vitiate the assignment, where it appears elsewhere in the instrument that the property is specifically described as located in certain designated buildings in the city of Seattle.

APPEAL (455)—HARMLESS ERROR—ADMISSION OF EVIDENCE—DEFECT SUPPLIED. Error in the admission of evidence is sufficiently corrected where there must be a new trial in any event.

'Reported in 226 Pac. 122.

ASSIGNMENTS FOR BENEFIT OF CREDITORS (28)—SALE BY ASSIGNEE—REMEDIES OF CREDITORS—LEVY OF ATTACHMENT. The failure of a common law assignee for the benefit of creditors to give notice of sale of the property, and the invalidity of the sale, would not affect the title of the assignee or subject the property in his hands to a levy under a subsequent writ of attachment as the property of the insolvent.

Appeal from a judgment of the superior court for King county, Frater, J., entered June 7, 1923, upon the verdict of a jury rendered in favor of the defendant by direction of the court, in an action to recover property levied upon. Reversed.

*Leopold M., Stern* and *Clarence L. Gere,* for appellant.

*Walter B. Allen,* for respondent.

FULLERTON, J.—For sometime prior to September 16, 1920, one A. Greenberg owned and operated three millinery stores situated in separate buildings in the city of Seattle, which buildings he held under leases. The businesses were conducted under separate names; one known as "Maximes," another as the "Fashion Shop," and the third as the "Criterion." Greenberg being in failing circumstances and unable to meet the obligations due his creditors, if not in fact insolvent, on the day named made a common law assignment of all of his stock of goods, wares, merchandise and fixtures, in the stores above mentioned, together with the good will of the business, his book accounts, and the leases he held on the buildings, to one Victor Staadecker, for the benefit of his creditors, a list of whom was attached to the assignment. The assignment recited that it was made in trust to Staadecker, and empowered him to take immediate possession of the property described, sell the property either at public or private sale, collect, sell or compromise the book ac-

counts, and distribute the proceeds equally and ratably among the listed creditors, or to such of them as would execute a release to Greenberg of all their claims against him. Staadecker took possession of the assigned property, and on the same day sold the entire property to Louis Hurwitz, an uncle of Greenberg, for the sum of $23,220, executing and delivering to him a written bill of sale of the property. The proceeds of the sale netted some twenty seven per centum of Greenberg's obligations, and this per centum Staadecker tendered to the several listed creditors, among whom was Marx, Ring & Dubin, a corporation.

The corporation named refused to accept the sum tendered, and later on began an action in the superior court against "John Doe and Richard Doe, doing business as Maximes," upon their claim of indebtedness. At the commencement of the action it caused a writ of attachment to issue, which the sheriff levied upon certain fixtures in one of the stores sold to Hurwitz, and of which Hurwitz was then in possession. Hurwitz thereupon instituted the present proceedings against the sheriff to recover the attached property, executing a bond and securing the return of the property. Issue was subsequently taken on the complaint, and a trial entered upon before a jury. At the conclusion of the claimant's case, the trial judge sustained a challenge to the sufficiency of the evidence, and instructed the jury to return a verdict in favor of the defendant. A judgment dismissing the action was subsequently entered, and from this judgment Hurwitz appeals.

The reasons which actuated the trial court in instructing a verdict do not very clearly appear in the record, but if we have correctly gathered them, they are, (1) that the assignment is void upon its face, and

(2) that the transaction as a whole was fraudulent and void as matter of law, even conceding that the assignment might otherwise have been valid.

Noticing the first of the assigned reasons, we are not persuaded that it is well founded. The assignment was, in substance and form, that which we quoted in full in the case of *McAvoy v. Jennings*, 39 Wash. 109, 81 Pac. 77, and there held valid as between the parties to the action, and in the subsequent case of *McAvoy v. Jennings*, 44 Wash. 79, 87 Pac. 53, held valid as to the general creditors of the assignor. In addition to the particular decision, this court has held that even an insolvent corporation can make a common law assignment for the benefit of its creditors, and that such an assignment will vest in the assignee the title to the real and personal property of the corporation so as to prevent a judgment creditor, obtaining judgment after the date of the deed of assignment, from subjecting the property assigned to execution under the judgment. *Nyman v. Berry*, 3 Wash. 734, 29 Pac. 557. So, we have held that an insolvent individual debtor may prefer his creditors, and may assign his property to a trustee for the benefit of certain of them to the exclusion of others. *Holt Mfg. Co. v. Bennington*, 73 Wash. 467, 132 Pac. 30. See, also, *Gilbert v. Morgan Lum. Co.*, 87 Wash. 293, 151 Pac. 785. We cannot therefore regard as open to further debate the question which the trial court found controlling.

The second question we think is also without merit. The fact that the property was sold by the assignee on the same day that he received an assignment of the property, and the further fact that he sold it to an uncle of the insolvent debtor, are the only facts we find in the record which might give rise to an inference that the transaction was fraudulent. But when these

matters were broached in the court below, the appellant offered an explanation of them. He offered to show, and did show as far as the trial court would permit him to show, that there was no hasty action on the part of any one. Greenberg had been in financial difficulty for a considerable period of time. It was known that he could not longer successfully continue his business. For some weeks prior to the assignment there had been meetings of his principal creditors—more than a dozen, one of them testified—at which Greenberg had attended, to devise the best means of closing out his business and of dividing his assets among the creditors. Efforts were made to find a purchaser for the property, and the offer of the uncle was the best one obtainable, and the instruments thought to be fraudulent were executed only after an agreement had been reached that such was the better way to accomplish the purposes intended. The court refused to permit the jury to consider this evidence on the theory that it was not competent, apparently because the matters occurred prior to the execution of the assignment. But we thing it manifest that the evidence was admissible for the purposes for which it was offered, namely, to dispel any inference, arising from the unexplained facts, that the transaction might be tainted with fraud.

With this evidence in the record there was plainly no ground for determining the transaction fraudulent as matter of law. It is our opinion, however, that the same conclusion must be reached even if this evidence be rejected. Fraud, it must be remembered, is never presumed, but must be proven. It may be shown by direct proofs, or it may arise by inference from other facts shown. But usually and generally, whatever may be the character of the evidence by which it is sought

to be established, the ultimate question whether it is established is a question for the trier of the fact. It is only in an extreme case where it can be said that the facts are so far conclusive as to make the question one of law. In this instance the facts relied upon are not of that conclusive sort. Reasonable minds, we think, might reasonably have differed upon the question. It follows as of course, therefore, that the trial judge should have submitted the question to the triers of the fact, instead of taking upon himself its determination.

The respondent's counsel in his brief makes certain specific objections to the sufficiency of the evidence which must be noticed. The first is that the assignee never got title to the specific property because the instrument of assignment, as he contends, assigns only property located in the city of Spokane. In the instrument introduced in evidence is a pencil notation laid under a videlicet describing the buildings in which the property was situated as "No. 11, North Wall St., Spokane, Wash." When the instrument was introduced in evidence, this notation seems to have been overlooked by both court and counsel, at least no explanation of it was there offered, and no objection was made to its introduction in evidence based on that ground. But we think the objection untenable for other reasons. Elsewhere in the instrument the property sought to be assigned is specifically described. Not only is its specific character mentioned, but the buildings in which it was situated were described by street and number, and specifically designated as being in the city of Seattle. Moreover, the property assigned was immediately placed in the possession of the receiver, who in turn gave it over to the appellant as the property assigned, and it was in the possession of the appellant when it was seized by the sheriff. The pencil

memoranda only tends to make the description of the property uncertain, but when that is definitely ascertained otherwise, the obscurity arising from the apparent misdescription is removed and is no longer of moment.

The second objection is based on the fact that the list of creditors originally attached to the assignment was not so attached when it was offered in evidence. But an explanation of the omission was offered when the assignment was offered in evidence. It was shown that it had been subsequently detached and misplaced. As the trial court admitted the instrument in evidence, the explanation must have been satisfactory to him. But the question is of no particular moment at this stage of the proceeding. There must be a new trial, and the error, if one was committed, is sufficiently corrected by a new trial. We cannot hold that the omission is fatal to the appellant's case, and this is the only pertinent contention available to the respondent.

The third objection is that no notice was given to the creditors of the intended sale of the property to the appellant, no inventory of the property taken, no advertisement for bids, ''and nothing whatever done in accordance with the common law relating to assignments for the benefit of creditors.'' But the omission of these acts could at best, in so far as they can be now considered, only tend to show the fraudulent nature of the transaction, and, in the light of the record, we cannot conclude that they conclusively establish fraud. At best the question was for the jury, not a matter of law for the court. It is perhaps needless to add that if the assignment was valid, the title of the assignee to the property is not affected by the manner in which he disposed of it. Nor does it give to a creditor the right to levy on the property in satisfaction of a debt due

him from the assignor. The creditor of the assignor might possibly set aside the sale of the property for irregularities therein which injuriously affect him, and he may have other remedies. But to set aside the sale would not revest the title of the property in the original assignor, nor subject it to attachment or levy as property of such assignor.

The fourth and final objection is met by our discussion of the questions already considered.

The judgment is reversed and the cause remanded for another trial.

MAIN, C. J., MITCHELL, and MACKINTOSH, JJ., concur.