[No. 29121.   Department One.   November 12, 1943.]

FIRST FEDERAL SAVINGS & LOAN ASSOCIATION OF COEUR D'ALENE, *Plaintiff*, v. GAEL G. MARSH *et al.*, *Defendants*, RALPH BUCKLEY, *as Sheriff, et al.*, *Appellants*, G. E. LOVELL *et al.*, *Respondents*.[1]

*M. E. Mack,* for appellants.

*Guy E. Lovell,* for respondents.

JEFFERS, J.—This action involves the right of Ola T. Marsh and Ward Marsh, her husband, to redeem certain property located in Spokane from a foreclosure sale had in the case of First Federal Savings & Loan Association of Coeur d'Alene, a corporation, plaintiff, v. Gael G. Marsh *et al.,* defendants. The only evidence introduced was record evidence.

In order that we may have a picture of the status of the parties to this proceeding, it will be necessary to set out the record, and our statement will be based upon what appears from the original instruments introduced herein, and what appears from the pleadings. In April, 1937, Gael G. Marsh and wife made, executed, and delivered to J. L. Cooper & Company their promissory note and real estate mortgage to secure the note. The mortgage covered lot 10, block 27, Jerome Park addition to Spokane. The mortgage was duly recorded April 2, 1937, in the office of the auditor of Spokane county. On October 20, 1938, the mortgage was duly assigned to First National Savings & Loan Association of Coeur d'Alene. The assignee foreclosed the mortgage in 1941, and became the purchaser of the property at a sale held December 13, 1941. A certificate of sale was issued to the

purchaser, which subsequently was assigned to G. E. Lovell, respondent herein.

On November 2, 1937, Gael Marsh and wife executed a common-law assignment for the benefit of creditors to Chas. F. Cowan. This assignment included in the property conveyed to the trustee the property covered by the Cooper mortgage, together with other property with which we are not concerned. The assignment was filed for record in the office of the auditor of Spokane county on November 4, 1937. On October 26, 1937, Gael Marsh and wife executed a quit-claim deed to Chas. F. Cowan, as trustee for the benefit of creditors. This deed covered the property here in question, and was filed for record on November 5, 1937. On October 24, 1939, Chas. F. Cowan, as trustee, executed a quitclaim deed to Charles F. Hafer, his successor as trustee. This deed was filed November 10, 1939.

On November 5, 1937, Bonded Adjustment Company, a corporation, which had taken no part in the common-law assignment, secured a judgment against Gael Marsh and wife for some three hundred dollars, in the superior court for Spokane county. This judgment, as appears from the stamp on the original, was not filed until November 12, 1937. Thereafter, pursuant to an execution duly issued, the sheriff levied upon and sold lot 10, block 27, Jerome Park addition to Spokane, this being the same property covered by the mortgage and included in the common-law assignment. At this sale, the judgment creditor, Bonded Adjustment Company, became the purchaser for the sum of ten dollars. The certificate of sale issued to the purchaser was, on November 24, 1942, assigned to Ola T. Marsh, mother of Gael Marsh, and on December 3, 1942, a sheriff's deed was issued to Ola T. Marsh.

On December 7, 1942, Ola T. Marsh gave notice in writing to the sheriff of Spokane county of her intention to redeem from the mortgage sale on December 14, 1942. While we have not checked the exact time, it seems to be conceded that December 14, 1942, was the last day on which a re-

demption might be had from the foreclosure sale had on December 13, 1941.

While in view of the conclusions we have reached it does not become material, it may be stated that Ola T. Marsh did not, at the time of serving her notice of intention to redeem, or at any other time, tender to the sheriff a sufficient sum of money to redeem the property, or any sum. The sheriff, upon receipt of the notice, notified Mr. Lovell, who, on December 11, 1942, filed a petition in the foreclosure proceedings, wherein he asked that the sheriff be restrained from accepting a redemption or issuing a certificate of redemption to Ola T. Marsh, for the reason that Mrs. Marsh was not a redemptioner, in that she had no lien on the property by virtue of any judgment, decree, or mortgage.

A temporary restraining order was issued, restraining the sheriff from delivering to Ola T. Marsh a certificate of redemption until Tuesday, December 15th, at which time the sheriff was directed to appear and show cause why the temporary restraining order should not remain in full force, pending final hearing. On December 15th, Mr. Lovell moved to dismiss his petition and quash the temporary restraining order, on the ground that the controversy had ended. On December 16th, the court quashed the restraining order, but did not dismiss the petition.

On December 16, 1942, Ola T. Marsh and husband and Gael G. Marsh and wife filed an answer and cross-complaint to Mr. Lovell's petition. The answer, in addition to certain denials, set up in substance the record as hereinbefore set out, and then in paragraph 5 alleged:

"That the lien of the judgment of November 12, 1938, [judgment of Bonded Adjustment Company against Gael Marsh and wife] was superior in every respect to the common-law assignment aforesaid, and was a lien on said real estate, and the said Ola T. Marsh was, and is, legally entitled to redeem from said mortgage sale of December 13, 1941."

By their cross-complaint, Ola T. Marsh and husband asked that they be decreed to be legally entitled to redeem from the foreclosure sale.

At the time of filing her answer and cross-complaint, Ola T. Marsh filed a motion asking that the sheriff be restrained from issuing a sheriff's deed to the property, and on the same day a restraining order was issued, ordering the sheriff and Mr. Lovell to appear in court on December 23rd and show cause why the restraining order should not be made permanent.

It was apparently after this restraining order was issued that the one procured by Mr. Lovell was quashed, and it was apparently because of the objection made by counsel for Ola T. Marsh that the court refused to dismiss the Lovell petition, although subsequently, on December 19th, it was dismissed.

Lovell and wife filed an answer to the Marsh cross-complaint, wherein it was alleged that Ola T. Marsh had never redeemed from the foreclosure sale, and that the time for redemption had expired; that Ola T. Marsh and husband were not redemptioners, and at no time had a right to redeem.

When the case came on for hearing, because the petition of Mr. Lovell had been dismissed, the case was treated as an original action on the issues raised by the cross-complaint of Ola T. Marsh and husband and the answer of Mr. Lovell. The court, after hearing the cause and considering the argument of counsel, entered a judgment dismissing the cross-complaint of Ola T. Marsh and quashing the restraining order whereby the sheriff was restrained from issuing a sheriff's deed. Motions for judgment notwithstanding the memorandum decision and for new trial were made and denied, and this appeal by Ola T. Marsh and husband followed.

Appellants' assignments of error are: The court erred (1) in its decree that Ola T. Marsh and husband were not redemptioners; (2) in rendering a judgment in favor of G. E. Lovell and wife; (3) in rendering judgment against appellants for costs; (4) in denying appellants' motion for new trial; (5) in denying appellants' motion for judgment notwithstanding the court's memorandum decision; (6) in

not holding that the common-law assignment of Gael G. Marsh and wife was void and in holding that it was valid.

The trial court made and filed a very comprehensive memorandum decision, from which it appears that the court concluded that the common-law assignment was valid and passed to the trustee title to the property here involved; that such assignment becoming effective prior to November 12th, when the Bonded Adjustment Company judgment was filed, that judgment never became a lien on the property; and that, as Ola T. Marsh had no lien on the property, she was not a redemptioner and not entitled to redeem.

We are of the opinion that the principal question to be decided in this case is whether or not Ola T. Marsh and husband were in fact redemptioners, and as such entitled to redeem from the foreclosure sale.

Rem. Rev. Stat., § 445-1 [P. C. § 8110-12], provides in part as follows:

"The lien of judgments upon the real estate of the judgment debtor shall commence as follows:

"(a) . . . judgments of the superior court for the county in which the real estate of the judgment debtor is situated, from the time of the entry thereof."

The judgment of Bonded Adjustment Company, upon which Ola T. Marsh relies to establish her right to redeem, could not have become a lien upon the property of Gael Marsh, the judgment debtor, until November 12, 1937, the date the judgment was filed. We are of the opinion the common-law assignment, if valid, became effective on November 5, 1937, that being the date of the filing of the deed from Gael Marsh and wife to Chas. F. Cowan. We make the last statement, not with the idea that it is the announcement of any general rule, but because of the lack of evidence in this case as to just when it may have been the intention of the parties to make the assignment effective.

Any debtor owning property has, as an incident of ownership, an inherent common-law right to make a voluntary assignment of such property for the equal benefit of his creditors. 6 C. J. S. 1227, § 6.

We have long recognized the right of an insolvent debtor to make a common-law assignment for the benefit of creditors. We stated in *Endicott-Johnson Corp. v. Bloom,* 175 Wash. 606, 27 P. (2d) 1069:

"From the beginning it has been the rule in this state that a debtor, though insolvent, may in good faith prefer one or more of his creditors over all other creditors, even to the extent of the exhausting of his assets. This court adopted that rule in *Turner v. Iowa National Bank,* 2 Wash. 192, 26 Pac. 256, and has never departed from it.

"Since a debtor may so prefer a creditor or creditors by a direct conveyance, there appears to be no valid reason why the conveyance may not be to a trustee for the benefit of those to be preferred. Indeed, such conveyances to trustees were upheld in both the *Vietor* [*Vietor v. Glover,* 17 Wash. 37, 48 Pac. 788] and the *McAvoy* [*McAvoy v. Jennings,* 44 Wash. 79, 87 Pac. 53] cases."

Let us now examine some of the authorities relative to the rights or title acquired by the trustee under such an assignment. In 2 R. C. L. 655, § 13, under the general heading "Assignments for the Benefit of Creditors," we find the following statement:

"The broad rule is that a general assignment for the benefit of creditors passes to the assignee all property and every right of the assignor."

In the same volume, at p. 659, the following rule is announced:

"Broadly stated the rule is that title passes to the assignee at the moment when the assignment is complete, subject to all liens which have attached before that time, and to no others. Thus a judgment obtained prior to an assignment for the benefit of creditors may be a lien on the real estate of the assignor, but one obtained subsequent thereto is no lien, for the title has passed to the assignee, and the judgment can have no retroactive effect."

We have followed the rule last above announced, as indicated by the case of *Gilbert v. Morgan Lbr. Co.,* 87 Wash. 293, 151 Pac. 785, wherein we stated:

"The bill of sale with the conditions annexed was in the nature of a general assignment for the benefit of the credi-

tors of the assignor, and the rule is general in such cases that the assignment passes to the assignee all title to the property then vested in the assignor, and vests in the assignee title to the property *superior to that of any person save those who have prior thereto acquired some specific lien upon it.* Contrary, therefore, to the appellant's contentions, we think it acquired no lien upon or right to the property in virtue of the purported sheriff's sale. *Since the title to the property was not then vested in the execution debtor, but was vested in another for the benefit of third persons, it was not subject to levy and sale as the property of the execution debtor.*" (Italics ours.)

██ ██ Appellants contend that the common-law assignment is void on its face as to Bonded Adjustment Company, a nonconsenting creditor, and to support this contention they point out some twelve provisions of the assignment which they claim are invalid and which make the assignment as a whole invalid. What are the rights of appellants as nonconsenting creditors, in so far as this assignment is concerned?

In *McAvoy v. Jennings,* 44 Wash. 79, 87 Pac. 53, we quoted from *Vietor v. Glover,* 17 Wash. 37, 48 Pac. 788, as follows:

" 'It is the established law of this state that an individual, although insolvent or in failing circumstances, may pay or secure one or more creditors to the exclusion of others equally meritorious, even if by so doing he exhausts the whole of his property.' "

The opinion continues, referring to the *Vietor* case:

"It was also said that the manner of giving the preference was immaterial; that it might be given by deed or in any mode which effects a legal transfer of the property, . . . citing Bump on Fraudulent Conveyances (3d ed.), page 186. It was further said:

" 'The right to prefer manifestly involves the right to designate the creditors, or class of creditors, to be preferred; and it therefore follows that the only ground on which the unpreferred creditors can justly complain is that the claims of the preferred creditors are not *bona fide* and real.'

Then, if an insolvent debtor has a right to prefer one class of creditors to the extent of the absolute exclusion of another class, by a diversion of the funds of the estate by payments made to the preferred class which exhausts such funds,

it must follow that he has a right to make such payments upon such terms as he sees fit to impose. If the terms are not agreed to by the creditor, the only result is that he will not become a preferred creditor. In this instance, if the respondent's assignor, the bank, had not been incorporated in the agreement by being placed upon the list of creditors to whom the payments should be made, he could not have complained under the law which has been announced by this court. He certainly is not in any better position by reason of his having been placed among the creditors. The right, in the absence of a fraud upon the creditors by payment of claims which are not *bona fide,* to make such payments as the debtor sees fit to make, it seems to us must logically carry with it the right to make the agreement which is the basis of this action."

In the case of *Endicott-Johnson Corp. v. Bloom,* 175 Wash. 606, 27 P. (2d) 1069, we stated the question to be answered, as follows:

"May an individual debtor, though insolvent, in *good faith* execute a trust mortgage to secure all of his creditors ratably which will be good as against one or more creditors, who, refusing to accept under the mortgage, seek to subject the mortgaged property to the payment of their claims, thereby securing to themselves priority over all other creditors?" (Italics ours.)

After referring to the *Vietor, McAvoy,* and other cases, the opinion states:

"Since a debtor may so prefer a creditor or creditors by a direct conveyance, there appears to be no valid reason why the conveyance may not be to a trustee for the benefit of those to be preferred. Indeed, such conveyances to trustees were upheld in both the *Vietor* and the *McAvoy* cases, *supra.*

"This mortgage, if valid, must necessarily hinder and delay any creditor who chooses not to take under it; . . .

"Such an intent to hinder and delay must inherently exist in every preference. No one can ever be preferred without thereby in some degree hindering and delaying others. To hold that this incidental hindering and delaying invalidates this mortgage, would be to overrule all of our previous decisions upholding preferences."

We then quoted from 12 R. C. L. 574:

" 'It is immaterial that other creditors may by the preference be delayed or wholly prevented from obtaining payment; for such is the natural result of the transaction; but a distinction is drawn between the inevitable result of a legal act, *and a bad intent.*' " (Italics ours.)

The opinion continues:

"The question of what is a bad intent which will invalidate such a conveyance, seems to be of vital importance here.

"To indicate a bad intent, there must be a hindering of creditors by the debtor for his own advantage in some way such as a conveyance in trust for his own use and benefit, or a hindering which leaves the debtor free to make disposition of the property according to his own will or for his own purposes. Perhaps, in addition to that, any device which has for its primary purpose the preventing and averting of legal action by creditors, thus rendering the courts helpless to enforce just demands, would, in most cases indicate the bad intent which the law condemns."

It seems to us, then, that in the instant case before appellants can successfully attack the assignment in question it must appear upon the face of the instrument itself that it was made by the assignors with a bad or fraudulent intent unreasonably to delay and hinder their creditors. The presumption is that it was made with an honest intent.

The assignment contains some twenty-one numbered paragraphs or provisions. It is apparent from a study of the instrument that it is a form designed to cover many situations, among which is one where the trustee is to operate and carry on the business of the assignors. The assignment therefore contains provisions relative to the manner in which the trustee may operate and carry on such business. Inasmuch as there was no business to be carried on in the instant case, the only property conveyed to the trustee being certain real estate, there are some provisions in the assignment which do not strictly apply to this case. However, the fact that there may be provisions in the assignment which are not applicable to the trust created, or

even provisions which are invalid, would not necessarily require that the entire assignment be declared invalid, if those provisions which are valid can be separated from those which are not, without defeating the general intent and purpose of the assignment. See *Endicott-Johnson Corp. v. Lurie,* 152 Wash. 653, 278 Pac. 693.

■ It is apparent to us that the general purpose of the assignment was to transfer to the trustee all the property of the assignors, to the end that the trustee reduce the property to money as soon as possible, taking into consideration the character of the property and the best interests of the creditors, and distribute the proceeds, less certain expenses and costs of administration, ratably among all the creditors.

While we do not deem it necessary to set out the entire instrument, we shall quote certain provisions which to us show the intent of the assignors, and we shall also refer to some of the provisions claimed by appellants to be invalid.

"THAT WHEREAS, the assignors have become indebted to various persons, corporations and firms, and WHEREAS, the assignors desire to pay their creditors and each of them, equally and ratably, by transferring and assigning all of their property, both real, personal and mixed, wheresoever situated to the assignee, for benefits of assignor's creditors, and

"WHEREAS, the assignee is willing to act as assignee and take an assignment and conveyance from the assignors of all their property of every kind and description,

"Now THEREFORE, KNOW ALL MEN BY THESE PRESENTS: That the assignors for and in consideration of One Dollar ($1.00) in hand paid by the assignee and the administration of the property of the assignors by the assignee for the purpose of the payment of the debt of the assignors and of the covenants hereinafter mentioned, and other good and valuable considerations,

"DOES HEREBY GRANT, BARGAIN, SELL, CONVEY, CONFIRM AND DELIVER unto the said assignee its successors and assigns, all the property, both real, personal and mixed, wheresoever situated or found, belonging to the assignors. Said property, so far as known to any of the parties hereto, is particularly described as follows: [Then follows a description of three pieces of real estate, including the house and lot here in question.]"

We now come to some of the provisions claimed by appellants to be invalid. Paragraph 6a provides:

"To HAVE AND TO HOLD all of said property above mentioned, whether real, personal or mixed, and wheresoever situated, unto the said assignee, its successors and assigns, for the uses hereinafter mentioned, that is to say:

"The assignee shall take immediate possession of the trust estate, as full owner thereof and shall have and possess the same power to use, control, manage, mortgage, hypothecate and dispose of the same as the assignee shall in its legal judgment deem to be for the best interest of the creditors of the assignors.

"Paragraph 7: IT IS FURTHER AGREED that the assignee shall reduce the property herein conveyed to money as soon as the same can wisely, prudently and properly be done, taking into consideration the character of the property and using the assignee's best legal judgment. The assignee has the right to continue the business of the assignors and to use and sell the same either on cash or credit, as the assignee, in its best legal judgment, shall deem best.

"Paragraph 8a: IT IS FURTHER AGREED that the assignee may employ such agents, attorneys, labor and incur such expenses and purchase such materials as shall in its opinion, be necessary and proper for the economical and faithful administration of the trust herein created.

"Paragraph 8: IT IS FURTHER AGREED that the assignee may, if it shall deem it best, continue the business of the assignor, with the right to buy and sell new merchandise and incur all reasonable costs and expenses in connection therewith, and to give credit in the conduct of said business, to the end and in so far as may be reasonably necessary to reduce the properties of the assignor to money as soon as the same can wisely, prudently and properly be done."

Appellants contend that the above provisions relative to the right of the assignee to continue the business of the assignors are void, as are also the provisions giving to the assignee the right to sell the property for cash or credit, to buy and sell new merchandise and give credit. It is plain to us that the provisions were meant to apply to a situation where the assignee was to carry on the business of the assignors, and can be considered as surplusage in the instant case.

However, we do not believe it can be said, as a legal proposition, that the provisions for carrying on a business are invalid, as we are of the opinion such provisions are entirely consistent with an honest intent to make the property bring as much as possible for the benefit of the creditors, and only authorize the trustee to continue the business for such length of time as may be reasonably necessary to reduce the property to money, in a wise and prudent manner. See 6 C. J. S. 1277, § 92.

We have recognized in at least two cases that the business of an assignor may be carried on by the assignee, where it appears the intent of the assignment was to realize, as rapidly as possible, the full value of the assignor's property, and distribute the proceeds ratably to the creditors. See *Endicott-Johnson Corp. v. Johnson, supra,* and *Endicott-Johnson Corp. v. Lurie, supra.*

▇ Appellants also contend that the provisions of paragraph 9 are invalid. That paragraph provides that the assignee may, if in its legal judgment it deems best, sell all the property conveyed under the assignment, collectively or separately, at private or public sale, with or without notice of the sale published, or otherwise. A provision almost identical with that last referred to, except that it did not contain the words "with or without notice of sale published or otherwise," was upheld in *McAvoy v. Jennings,* 39 Wash. 109, 81 Pac. 77, and *Hurwitz v. Starwich,* 130 Wash. 1, 226 Pac. 122. In the last cited case, it appeared that the trustee, on the day he took possession of the property, sold it to Hurwitz. No notice of the sale was given.

Appellants make several other contentions relative to the provisions of the assignment in the instant case, but we are satisfied they are either answered contrary to appellants' contentions by the cited cases, or refer to provisions which do not apply here and which may be segregated from the applicable provisions without in any way affecting the purpose of the assignment.

After a careful examination of the assignment, we are satisfied that it cannot be said, as a legal proposition, that it

shows other than a good intent on the part of the assignors to vest title to their property in the assignee, to the end that the assignee sell the property as soon as the same can be done, taking into consideration the nature of the property and the best interests of the creditors, and thereafter distribute the proceeds ratably to all the creditors who have notified the assignee in writing of the amount and character of their claims, and whose claims have not been rejected by the assignee, as in the assignment provided.

. Respondents contend this same assignment was held valid by this court in *Hafer v. Marsh,* 16 Wn. (2d) 175, 132 P. (2d) 1024. It is true that in the cited case it was contended by Gael Marsh *et al.,* that this assignment was invalid. However, in view of the fact that our opinion in the cited case was based specifically on another ground, we do not think it can be said that this court has passed upon the validity of the assignment.

■ We are entirely in accord with the conclusions reached by the trial court, that the instrument is a valid assignment, and as such passed to the trustee all the right, title, and interest in and to the property here involved which the assignors had; that the assignment was complete at least not later than November 5, 1941, when the quitclaim deed to Mr. Cowan, as trustee, was filed for record, and consequently the judgment of Bonded Adjustment Company never became a lien on the property, as Gael Marsh and wife, on November 12, 1941, the date the judgment was filed, had no title or interest in the property to which a lien could attach.

It follows, then, that appellants, having no lien on the property by virtue of any judgment, decree, or mortgage, were not redemptioners, and therefore not entitled to redeem from the mortgage foreclosure sale.

We do not find it necessary to pass upon the other questions presented by the parties hereto.

The judgment of the trial court is affirmed.

SIMPSON, C. J., BEALS, STEINERT, and GRADY, JJ., concur.