**WARNER v. CITIZENS' BANK OF ANA-
CORTES.**

District Court, W. D. Washington, N. D.
May 19, 1927.

No. 21–B.

1. **Bankruptcy ⬥293(1)—District Court held
without jurisdiction of suit of trustee in bank-
ruptcy to cancel mortgage, in effect collateral
attack on prior order of referee refusing to
cancel mortgage (Bankruptcy Act, §§ 60b, 67c,
70e [Comp. St. §§ 9644, 9651, 9654]).**

Where, after partial administration of es-
tate under assignment for benefit of creditors
and assignee's sale of business free and clear of
liens, including outstanding chattel mortgage in
favor of bank, assignor was adjudged bankrupt,
and petition for order approving accounts of
assignee, allowing certain disbursements, and
impressing proceeds of sale with lien of bank's
mortgage, if valid, or canceling such mortgage,
was allowed by referee only in so far as it af-
fected the right of the trustee in bankruptcy to
receive proceeds turned over to him by as-
signee, otherwise denied, *held*, under Bankrupt-
cy Act, §§ 60b, 67c, 70e (Comp. St. §§ 9644,
9651, 9654), District Court had no jurisdiction
of suit by trustee in bankruptcy for cancella-
tion of mortgage which was executed within
three months preceding bankruptcy; the ref-
eree's order being final until reversed or modi-
fied, and not subject to collateral attack.

2. **Assignments for benefit of creditors ⬥184
—Assignee for benefit of creditors takes only
title of assignor.**

Assignee for benefit of creditors takes title
only of its assignor, and stands in his shoes.

3. **Assignments for benefit of creditors ⬥335
(1)—Status of chattel mortgage previously
given by assignor held not affected by assign-
ment for benefit of creditors.**

Assignment for benefit of creditors, *held*
not to affect status of chattel mortgage previ-
ously given by assignor.

4. **Bankruptcy ⬥185—Trustee in bankruptcy
held without right to maintain suit to cancel
mortgage after adopting sale of bankrupt's
business, made by assignee for benefit of
creditors without notice to bank.**

Where assignee for benefit of creditors sold
assignor's business without giving bank, holder
of chattel mortgage thereon, notice of sale or
affording it opportunity to protect itself, *held*,
trustee in bankruptcy of assignor, subsequently
appointed, adopting sale and securing referee's
qualified approval thereof, was without right to
maintain suit to cancel mortgage which was ex-
ecuted within four months preceding bank-
ruptcy, thereby foreclosing bank's rights cogniz-
able in bankruptcy court.

5. **Bankruptcy ⬥303(1)—Trustee, suing for
cancellation of mortgage, has burden of prov-
ing insolvency when mortgage was executed,
and that mortgagee had knowledge or was
chargeable with knowledge thereof (Bank-
ruptcy Act, §§ 60b, 70e [Comp. St. §§ 9644,
9654]).**

Trustee in bankruptcy, suing under Bank-
ruptcy Act, §§ 60b, 70e (Comp. St. §§ 9644,
9654), for cancellation of chattel mortgage ex-
ecuted within four months preceding bankruptcy
has burden of proving insolvency of bankrupt
on date of mortgage, and that mortgagee had
knowledge thereof, or was chargeable with
knowledge.

6. **Bankruptcy ⬥303(5)—In trustee's action
to cancel mortgage, evidence held insufficient
to show mortgagee's knowledge of insolvency
when mortgage was given.**

In trustee's action to cancel mortgage ex-
ecuted within four months preceding bankrupt-
cy, evidence *held* insufficient to show mort-
gagee's knowledge of insolvency when mort-
gage was executed, or that he was chargeable
with such knowledge.

In Equity. Action by H. E. Warner, as
trustee in bankruptcy of the estate of A. B.
Campbell, against the Citizens' Bank of Ana-
cortes. Decree for defendant.

On September 3, 1925, the bankrupt, to se-
cure an indebtedness due to the Citizens' Bank
of Anacortes in the sum of $2,300, executed
a chattel mortgage on a certain bakery and
supplies, etc., which was filed for record with
the county auditor of Skagit county on the
day following in accordance with the laws of
the state.

About November 25 following, one Beck,
of Seattle, at the suggestion of the Seattle
Merchants' Association, visited the bankrupt's
bakery for the purpose of buying, and made,
on returning, an offer of purchase, and was
thereafter advised that the offer was accepted,
and with a committee from the association
and Mr. Warner, agent of the association,
went to Anacortes for the purpose of closing
the deal, on December 3, 1926. On this day
the bankrupt made a common-law assignment
of his bakery, supplies, equipment, furniture,
tools, appliances, bills and accounts receivable,
cash on hand and upon deposit, insurance pol-
icies, good will, and choses in action, and all
of his property, waiving any and all exemp-
tions, for the benefit of his creditors, and,
among other things, provided:

"Whereas, said assignor desires to pay
each and every bona fide creditor filing a claim
with said assignee * * * equally and rata-
bly; * * * and whereas, said assignee is
willing to take an assignment and conveyance
from said assignor of all his property of ev-
ery kind and description for the purposes and
on the terms set forth, * * *" the as-
signee is given immediate possession of the
"trust estate," and empowered to control, use,
manage, and dispose of the same, to incur all
proper expenses as in its judgment are neces-
sary, to sell all of the "trust estate" collec-
tively or separately by private or public sale,
with or without notice, and after deducting
the expenses of administering the "trust es-

tate," including attorney's fee, if an attorney is employed, and reasonable compensation to the assignee, which is declared to be 10 per cent. on the first $500, 7½ per cent. on the next $1,000, and 5 per cent. on the balance, and the remainder to be equally and ratably paid to the creditors who have filed claims, or proven to its satisfaction such claims; and the failure of a creditor to file claim in 90 days after notice of assignment, bars the claim.

On the 4th of December, 1926, the assignee transferred to H. M. Beck for $6,764.67—$2,764.67 cash, and the balance in 20 deferred payments of $200 each, evidenced by promissory notes, secured by chattel mortgage of all of the bakery property, etc., except that it does not include a lease upon the property upon which the bakery is situated. The bill of sale conveys all personal property to Beck free and clear of all liens.

Beck immediately went into the possession of the property. Shortly thereafter the assignee sought to secure a release of the mortgage held by the Citizens' Bank of Anacortes; failing in which, on the 28th of December following, he caused to be instituted involuntary bankruptcy proceedings, and on the 14th of January, 1926, the order of adjudication was entered. H. E. Warner, agent of the Merchants' Association, and who had acted for the association in the assignment matter, was elected trustee by the claims controlled by the association. He is paid a salary as a regular employee of, and by, the Seattle Merchants' Association, and all fees received by him as trustee in bankruptcy are paid to the association.

Thereafter, on May 15, 1926, the association filed a petition before the referee, reciting in substance the common-law assignment "in trust for all creditors," and the adjudication, a partial administration of the estate and the turning over to the trustee, H. E. Warner, of "the residue of the trust estate in the hands of your petitioner as such assignee, * * * where it and its proceeds now remain, * * * but the same were so delivered and burdened with a lien in favor of your petitioner for priority claims paid by it during the administration of said trust, which lien, however, is specifically subject to an alleged lien, if any, of the Citizens' Bank of Anacortes under a certain chattel mortgage executed September 3, 1925, * * * in the sum of $2,346; that, in obtaining the deed of assignment at the request of creditors in the course of the administration of said trust, the assignee, at the request of a creditors' committee composed of the largest merchandise cred-

itors of said bankrupt, your petitioner, by its agent, H. E. Warner, on December 3, 1926, went to Anacortes * * * with said creditors' committee, and thereupon obtained the execution of said common-law assignment, * * * which was the outcome of a meeting of creditors called by your petitioner and held on November 10, 1925; * * * that contemporaneous with the taking of said assignment your petitioner negotiated with H. M. Beck to purchase the assets of said Campbell, with the exception of accounts receivable, * * * for the sum of $6,764.67; * * * that said proposed sale was upon the condition that the bakery should not be closed down by your petitioner, but sold as a going concern, free and clear of liens," except rental of premises; and then states that a bill of sale was issued to Beck free and clear of all incumbrances, and that the notes and mortgage taken as a part of the purchase price have been properly assigned by your petitioner to the trustee, and on December 8 a circular letter to the creditors of the estate was issued, advising of the transaction, and that it adjusted the claim of the National Cash Register Company for a cash register on a conditional sale, in a manner satisfactory to Beck, by paying him $500, and paid county taxes, $195.50, and Gray, McLean & Percy, on a conditional sales contract, $588.80, and that it is obligated to pay $50 attorney's fee; and then prays an order approving the report, confirming the acts and doings of the assignee, and for an order directing the Citizens' Bank of Anacortes to appear and show cause why the sale to Beck should not be confirmed, and the lien of the assignee impressed upon the proceeds and the assignee discharged, and the lien of the bank, if any, be impressed upon the fund turned over to the trustee, or the chattel mortgage of the bank be canceled, and, in default, the fund be discharged of any lien of said chattel mortgage, without prejudice to the right of the bank to file a "common claim" for the amount due.

On May 27 following the trustee filed a petition, praying as in the association petition, and that the defendant's mortgage be canceled, or lien be asserted against the proceeds of sale.

On the 30th of August, 1926, the referee denied these petitions, and on the 4th of September, 1926, entered a formal order discharging the show cause order and dismissing the petitions of the Merchants' Association and the trustee, and sustained the objection of the bank under its special appearance, to the jurisdiction. This order was not reviewed, or review sought.

On October 12, 1926, on a petition of the association, praying an order approving its accounts as assignee and allowing certain disbursements, and impressing transfer, etc., with mortgage lien of the defendant bank, if valid, to the proceeds of sale, or cancel the same, the referee entered an order approving the sale to Beck "in so far as it affects the right of the trustee herein to receive and retain the proceeds thereof, amounting to $2,-983.07, turned over to him by said assignee," and denied the petition in all other respects. No review was had, or sought, of this order.

On the 27th day of December, 1926, H. E. Warner, as trustee, commenced this action, praying "that the said mortgage * * * be adjudged null and void, and canceled of record, and held for naught. * * *" The defendant objected, and, reserving its objection to the court's jurisdiction, answered.

The cause came on for trial before the court upon the issues joined. The testimony disclosed that the trustee at no time had possession, constructive or otherwise, of the bakery or any of the property included in the transfer by the assignee to Beck; that the notes taken for the deferred payments and the mortgage to secure them have been at all times in the possession of the assignee; that the payments have been and are still made monthly to the assignee; that the cash paid by Beck, less the sums paid out by the assignee, is in the assignee's possession. The trustee does not claim the right of possession of any of the property sold to Beck and covered by the mortgage of the defendant bank.

Nelson R. Anderson, of Seattle, Wash., for plaintiff.

H. C. Barney, of Anacortes, Wash., and R. W. Greene, of Bellingham, Wash., for defendant.

NETERER, District Judge (after stating the facts as above). [1] The trustee may only prosecute actions where the bankrupt might have brought it in the absence of bankruptcy proceedings, unless by consent of the defendant, except for recovery under sections 60b, 67c, and 70e, and Act May 27, 1926 (44 Stat. 662).

Section 70e (Comp. St. § 9654): The trustee may avoid transfer which any creditor might have avoided, and recover the property or its value from the person to whom transferred, unless he is a bona fide holder for value prior to adjudication. This he may do in the federal or state court. Section 67c (Comp. St. § 9651) clearly has no application.

Section 60b (Comp. St. § 9644): If preference has been given by the bankrupt, the trustee may recover the property or its value, and federal and state courts have concurrent jurisdiction.

The trustee is not seeking to recover the property, nor its value. He recognizes and confirms the transfer to the assignee Seattle Merchants' Association by the bankrupt under its common-law assignment deed, and by the assignee to Beck. No recovery or value of property to which right of possession is claimed is sought, nor does the trustee seek to reclaim any property, a part of the bankrupt estate, nor to recover property which any creditor might have avoided, or its value, transferred to a person not a bona fide holder for value. It is agreed that Beck is a bona fide holder for value prior to adjudication.

The defendant bank has neither filed a claim against the bankrupt estate, nor asserted a lien against any property held by the trustee. The Merchants' Association with knowledge of the bank's mortgage took the common-law assignment recognized by the state court procedure, sold the assets (bakery, etc.) without notice to the bank or opportunity to the bank to buy, or secure a purchaser (there is evidence that the bankrupt had opportunity to sell the property at a prior time for a materially greater sum, but this did not meet the approval of the creditors' committee). The right, privilege, and opportunity of a mortgagee to buy is a valuable right.

[2] The Merchants' Association, assignee for the benefit of creditors, took the title of its assignor. As between the parties, the bankrupt and the bank, the mortgage is valid. The assignee stands in the "shoes" of the assignor. See Peet v. Spencer, 90 Mo. 384, 2 S. W. 434; Tufts v. Thompson, 22 Mo. App. 564; Thomas Mfg. Co. v. Huff, 62 Mo. App. 124; Adams v. Lee, 64 N. H. 421, 13 A. 786; Warner v. Jameson, 52 Iowa, 70, 2 N. W. 951, and other cases.

[3] The assignment did not change the status of the mortgage. The transfer by the assignee to Beck did not change the relation of the parties. The order of the referee upon the petition of the assignee and the trustee for approval of the acts of the assignee in consummation of transfer, authorizing the trustee to receive the proceeds of sale, and denying the petition in other respects, did not change the conditions. The order of the referee is final until reversed or modified, and may not be collaterally attacked. Jurisdiction may well be challenged.

The Merchants' Association and plaintiff Warner, trustee, as agent of the Merchants' Association in the common-law assignment deed, are acting in a dual relation. They have

administered the estate under the assignment, with the exception of receiving the deferred payments on sale of bakery which are still being paid to the Merchants' Association monthly, and the distribution of the proceeds among the creditors filing claims.

[4] I think the court, assuming jurisdiction, could well say that the plaintiff, as agent of the Merchants' Association and administrator of the common-law assignment proceeding, having acted under the right conferred by the deed of assignment for the benefit of creditors, not invoking the powers of the bankruptcy court until the property under mortgage was sold without notice to the mortgagee, and as representative of the creditors and upon their authorization adopting the sale to Beck, and on his petition seeking approval by the referee, and the creditors, whose representative he was and is, stepped into the "shoes" of the assignee in so far as the sale is concerned, and that the plaintiff can claim no greater right on sale without notice to the mortgagee than the assignee, and should not now be permitted by decree of this court to invalidate the mortgage lien of the defendant bank and deprive it of this valuable right or privilege.

The rule of equity, "He who seeks equity must do equity," should apply to the plaintiff, as it would apply to the assignee, and, exercising the power under the deed of assignment, equity requires that the bank be afforded opportunity by timely notice to protect itself. Such is the rule of the bankruptcy court. See In re Kohl-Hepp Brick Co. (C. C. A.) 176 F. 340; In re Reading Hat Mfg. Co. (D. C.) 224 F. 786. While failure of notice of sale to the bank did not affect the validity of the sale (Hurwitz v. Starwich, 130 Wash. 1, 226 P. 122), it did deprive the defendant of a valuable right.

Nor is the defendant collaterally attacking the sale or objecting to the sale. It merely contends that the association, as assignee, stands in the "shoes" of the bankrupt, and that having sold the property, as it had a right to do, without notice, as was likewise the right of the bankrupt while he was owner, the trustee, adopting the sale and securing the qualified approval of the referee, has not now the right to foreclose the bank in this proceeding of a valuable privilege recognized by the bankruptcy court, and that this court must leave the parties and the mortgage in the status where it finds them.

It may well be stated that a party may not pursue two remedies at the same time, or conjunctively one remedy in two forums, and, as testified in substance by the trustee, the assignee would not deliver or pay over the estate, or proceeds thereof, until relieved of obligation under its warranty of title to Beck. This action, in effect, is an action to quiet title to personal property not in possession of the trustee, but in Beck, who has possession of the property, the grantee of the assignee, who is still receiving the monthly deferred payments, instead of an action to recover property or its value, or avoid transfer which a creditor might have avoided and recover the property or its value.

[5] It may be further said upon the merits that the burden is upon the plaintiff to show insolvency on the 3d day of September, 1925, and that the defendant bank had knowledge thereof, or should be charged with knowledge. The financial statement made by the bankrupt to the bank June 10, 1925, shows: Accounts receivable, cash on hand and in bank, automobile equipment, furniture and fixtures, machinery, merchandise, and tools and equipment, $16,558.55; life insurance, $10,000; insurance on machinery, merchandise, etc., $9,300. Liabilities—accounts payable, contracts, notes to the defendant bank, trade acceptances, total $5,722.66. Of this $2,600 was due to the bank. There was practically no change, of which the bank had knowledge, in the status on September 3, when the mortgage was taken at the request of the bank examiner, except that the indebtedness to the bank had been reduced approximately $300.

Was the aggregate of the bankrupt's property on September 3, at a fair valuation, sufficient in amount to pay his debts, or had the bank reason to presume that the aggregate of his property was not, at a fair valuation, sufficient in amount to pay his debts?

The bankrupt was doing a successful business. The average monthly bank deposit in the defendant bank for nine months previous was a little less than $2,000. After the filing of the mortgage on September 3, nine new creditors to the amount of $850 were made, and the old creditors extended credits to the additional amount of $853.49. While the bankrupt in some previous months had required time to pay some trade acceptances, they had all been paid. The bank also had in June declined to advance an additional amount of $1,000, and at another time, $100, but under all of the evidence no knowledge of insolvency can be attributed to that. Nor did the bank know that some of the larger creditors had declined to extend further credit. At the end of September the bank balance was $404.80, and on October 7, $490.87. The business continued satisfactorily until the bankrupt began drinking and gambling, and neglecting his business, and became sick, and was confined to.

his bed, and was there when the common-law assignment was made. The creditors did not question the bankrupt's solvency until November 10, when a conference was had. The bankrupt by reason of dissipation was neglecting his business, and of course the creditors were concerned.

[6] After considering the entire record and weighing all of the evidence with relation to indebtedness and value of assets on the 3d day of September and of the conduct of all parties, and relation of the defendant bank to the bankrupt, and its knowledge, the court cannot say that the plaintiff has sustained the burden and established knowledge, or conditions from which knowledge to the defendant bank of insolvency on September 3 should obtain. Dean v. Davis (C. C. A.) 212 F. 88, and 242 U. S. 438, 37 S. Ct. 130, 61 L. Ed. 419, has no application.

Economy of time suggested that every issue contended for be disposed of by this court, so that in the event of review by the Circuit Court of Appeals the matter determined may be final. From any view of approach the action must be dismissed.